254 P.3d 678 (2011)
2011 OK 29
The CITY OF OKLAHOMA CITY, a municipal corporation, Plaintiff/Appellee/Cross-Appellant,
v.
The INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 157, AFL-CIO/CLC, Defendant/Appellant/Cross-Appellee.
Nos. 109,032, 109,036.
Supreme Court of Oklahoma.
April 12, 2011.
*679 Kenneth D. Jordan, Assistant Municipal Counselor, Paula A. Kelly, Richard E. Mahoney, City of Oklahoma City, Oklahoma City, Oklahoma, for Plaintiff/Appellee/Cross-Appellant.
Kevin E. Hill, Homsey, Cooper, Hill & Associates, Oklahoma City, Oklahoma, for Defendant/Appellant/Cross-Appellee.
COMBS, J.
¶ 1 In the spring of 2009, the City of Oklahoma City (City) and the International Association of Firefighters, Local 157, AFL-CIO/CLC (IAFF), began negotiations for a collective bargaining agreement for City fiscal year 2009-2010 (FY 2010, beginning July 1, 2009), pursuant to the Fire and Police Arbitration Act, 11 O.S.2001, §§ 51-101, et seq. The parties could not agree on an FY2010 collective bargaining agreement and entered into a written agreement on June 23, 2009, to extend the FY 2009 collective bargaining agreement until a successor contract could be agreed upon for FY2010 or until June 30, 2010, whichever occurred first.
¶ 2 The parties progressed to interest arbitration pursuant to 11 O.S.2001, Supp.2004, §§ 51-106 through 51-110. Each party selected an arbitrator and the arbitrators selected a neutral arbitrator pursuant to 11 O.S.2001, § 51-107. The interest arbitration hearing was scheduled for August 19, 2009. Not less than seven days prior to the hearing, the parties timely submitted their last best offers to the interest arbitration board *680 and to each other as required by 11 O.S. Supp.2004, § 51-108(A)(2).
¶ 3 On August 19, 2009, the IAFF presented a Motion to Strike City's last best offer, alleging a failure to bargain in good faith. City had changed some standard language that had been used in previous contracts dealing with wages. Previous contracts contained the following language:
The parties hereto agree that a market approach shall be used to determine appropriate wage levels for members.
In City's last best offer, the language was changed to the following:
It is the intent of the parties that in fiscal year 2010-2011 a market approach shall be used to determine appropriate wage levels for members.
¶ 4 City asserted this change was intended to reflect the offer made by City throughout negotiations. City maintains its offer throughout the negotiations and arbitration had always been for a contract rollover of the FY2009 contract into FY2010 and therefore, there would be no "market approach" used for FY2010. In the Affidavit of Monica Coleman, Assistant Personnel Director for City, she states the wage freeze was an issue that had been the subject of the negotiations and she fully anticipated the parties to return to a "market approach" in FY2011. City did admit, however, prior to submitting its last best offer it did not present this identical language to IAFF.
¶ 5 Two arbitrators, the neutral arbitrator and IAFF's arbitrator, issued a signed majority "Decision and Award" (Decision) sustaining IAFF's Motion to Strike based upon City's failure to bargain in good faith.[1] The Interest Arbitration Board found City's unilateral changes to its last best offer were never presented to IAFF as part of the negotiations and therefore City failed to bargain in good faith. By sustaining IAFF's Motion, the Interest Arbitration Board struck from consideration City's last best offer.
¶ 6 On September 15, 2009, City adopted a resolution authorizing the Municipal Counselor to file litigation challenging Interest Arbitration Board's subject matter jurisdiction and authority to strike City's last best offer and enjoining IAFF from enforcing its last best offer against City. On September 17, 2009, James D. Couch, City Manager for the City of Oklahoma City, filed a Request for Special Election with the City Clerk of Oklahoma City pursuant to 11 O.S. Supp.2004, § 51-108(B). The request must be filed within ten (10) days of the date of the written Decision. The City Clerk of Oklahoma City provided notice to the Mayor and City Council of Oklahoma City. The City Council of Oklahoma City is required by 11 O.S. Supp. 2004, § 51-108(C) to call a special election within ten (10) days of such notification. On September 29, 2009, the City Council of Oklahoma City adopted a resolution calling a special election for Tuesday, February 9, 2010, to submit to the voters the last two last best offers submitted to the Interest Arbitration Board by City and IAFF. The IAFF and City had twenty (20) days from the resolution's adoption to agree on a ballot for the special election. The parties could not agree on a ballot so each submitted its own proposed ballot to the Interest Arbitration Board. On November 2, 2009, the Interest Arbitration Board chose the IAFF's ballot. The IAFF's ballot included only provisions relating to its last best offer and included only one option for the voter. The option in the ballot was only to vote in favor of IAFF's last best offer. There was no option to vote against IAFF's last best offer.
¶ 7 On November 10, 2009, City adopted a resolution authorizing the Municipal Counselor to file litigation concerning Interest Arbitration Board's selection of IAFF's ballot title. On the same day, City also adopted a resolution to reschedule the special election *681 to May 11, 2010, the last lawful municipal special election date in FY2010. The purpose was to have the district court make a determination regarding the proper ballot title before a special election was held. On May 4, 2010, City adopted a resolution cancelling the special election because the ongoing litigation had not resolved the ballot title issue prior to the last date notice could be lawfully given to the Oklahoma County Election Board for the special election.
¶ 8 On November 25, 2009, City filed its Petition for Declaratory Judgment and Equitable Relief (Petition). The Petition contained two claims for relief. City thereafter filed two motions for summary judgment, one on each of its two claims for relief.[2]

City's First Claim for Relief
¶ 9 City asserts in its Petition and Motion for Summary Judgment on its First Claim for Relief that the Interest Arbitration Board exceeded its subject matter jurisdiction and legal authority by sustaining IAFF's Motion to Strike and, thereby, striking City's last best offer from consideration and further by basing its decision upon an unfair labor practice rather than the five criteria set out in 11 O.S. Supp.2001, § 51-109. Because the Interest Arbitration Board allegedly exceeded its statutory authority, City's prayer asked the trial court to rule the Interest Arbitration Board's Decision is void and/or invalid, unenforceable and should be vacated. The trial court agreed with City and entered a Journal Entry of Judgment on August 6, 2010, holding the Decision of the Interest Arbitration Board was void and/or invalid, unenforceable and vacated.[3]
¶ 10 An appeal on summary judgment comes to this Court as a de novo review. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Kluver v. Weatherford Hospital Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. The issues to be addressed concerning the trial court's granting of summary judgment on City's Motion for Summary Judgment on its First Claim for Relief do not involve any substantial controversy as to any material fact and can be decided as a matter of law. The issues amount to a determination of what authority an interest arbitration board has and whether or not that authority was exceeded in the present case.
¶ 11 The statutory authority for interest arbitration is found in 11 O.S.2001, Supp. 2004, §§ 51-106-110 of the Fire and Police Arbitration Act. Sections 51-108 and 51-109 grant authority to an interest arbitration board to make a decision on the parties' last best offers. 11 O.S. Supp.2004, § 51-108(A)(4) provides:
4. Within seven (7) days after the conclusion of the hearing, a majority of the arbitration board members shall select one of the two last best offers as the contract of the parties. The criteria to be used by the board in determining which offer to select shall be limited to paragraphs 1 through 5 of Section 51-109 of this title. The arbitration board may not modify, add to or delete from the last best offer of either party. Written notice of the selection decision shall be mailed or delivered to the bargaining agent and the corporate authorities. (emphasis added)
11 O.S.2001, § 51-109 provides the five criteria that control the Interest Arbitration Board's selection process.[4]
*682 ¶ 12 IAFF's Motion to Strike filed with the Interest Arbitration Board alleged City made a unilateral change without negotiating for such change and this amounted to a failure by City to collectively bargain. It asked the Interest Arbitration Board to strike City's last best offer and find IAFF's last best offer was the only valid and legal last best offer before the arbitrators. It also requested the Interest Arbitration Board adopt the IAFF's contract as the Collective Bargaining Agreement between the parties for FY 2009-2010.
¶ 13 The Interest Arbitration Board issued two documents with a "Decision and Award." One was dated September 4, 2009, and the other was dated September 7, 2009. Both state "Decision and Award: Union's Motion to Strike City's Last-Best Offer is SUSTAINED." Each also attached identical documents entitled "[t]he Arbitration Board's Response To The Union's Motion To Strike The City's Last Best Offer"(Response). The parties disagreed on which document is the official Decision but the trial court held it was irrelevant in rendering its decision on City's First Claim for Relief. We agree. Both contain identical language in the "Decision and Award" portion of the documents and the Responses are identical. The correct date is irrelevant in determining whether or not the Interest Arbitration Board exceeded its authority. 11 O.S. Supp.2004, § 51-108(A)(4) authorizes an arbitration board to select one of the two last best offers as the contract of the parties and limits the criteria used in the selection to the five criteria listed in 11 O.S.2001, § 51-109. This section further prohibits an arbitration board from modifying, adding to or deleting from the last best offer of either party.
¶ 14 Interest Arbitration Board's Response found City failed to bargain in good faith by unilaterally changing its last best offer without negotiation. The Interest Arbitration Board's Response also sustained IAFF's Motion to Strike, thereby removing City's last best offer from consideration and adopting IAFF's last best offer as the contract. A failure to bargain in good faith is by definition an "unfair labor practice" under 11 O.S. 2001, § 51-102(6)(5). The Interest Arbitration Board's Decision appears to be solely based on this unfair labor practice charge. The Public Employees Relation Board is the only entity granted authority in the Fire and Police Arbitration Act to hear charges relating to unfair labor practices. 11 O.S.2001, § 51-104b. The Fire and Police Arbitration Act does not grant such authority to an interest arbitration board.
¶ 15 IAFF argues an interest arbitration board is not restricted to the five criteria because the language in 11 O.S.2001, § 51-109, allows for other factors to be considered. 11 O.S.2001, § 51-109 provides "[t]he factors, among others, to be given weight by the arbitrators in arriving at a decision shall include: . . ." (emphasis added), then the five criteria found in footnote 4 of this opinion follow. IAFF contends this language would allow an interest arbitration board to hear unfair labor practice charges. We disagree.
¶ 16 11 O.S. Supp.2004, § 51-108(A)(4) provides "the board in determining which offer to select shall be limited to (emphasis added) paragraphs 1 through 5 of Section 51-109 of this title." Section 51-109 was enacted in 1977 and has never been amended.[5] Section 51-108(A)(4) was added in 1994 (Senate Bill 1173) and it applies specific restrictions to an *683 interest arbitration board's selection process.[6]
¶ 17 The enactment of Senate Bill 1173 (1994) expressed legislative intent to limit the decision-making process of an interest arbitration board. A cardinal rule of statutory construction is to ascertain and give effect to the legislative intent. Naylor v. Petuskey, 1992 OK 88, ¶ 4, 834 P.2d 439, 440. Any doubt as to the purpose or intent of a statute may be resolved by resort to other statutes relating to the same subject matter. In re Assessment of Durant Nat. Bank, 1923 OK 541, ¶ 7, 230 P. 712, 713. This Court has previously held the most recent legislative expression must be given effect over prior enactments of contrary import. Brown v. Marker, 1965 OK 172, ¶ 19, 410 P.2d 61, 66; State ex rel. Murphy v. Boudreau, 1982 OK 117, ¶ 12, 653 P.2d 531, 533. Further, as a general rule, general words in a statute are limited by subsequent more specific terms. State ex rel. Thompson v. Ekberg, 1980 OK 91, ¶ 7, 613 P.2d 466, 467. The plain language in 11 O.S. Supp.2004, § 51-108(A)(4) can be read only one way. The legislative intent clearly restricts an interest arbitration board's decision making to the five factors listed in 11 O.S.2001, § 51-109. The language in 11 O.S. Supp.2004, § 51-108(A)(4) was passed after the language in 11 O.S.2001, § 51-109, "among others," and it is more specific.
¶ 18 IAFF argues Interest Arbitration Board's Response included findings on some of the factors listed in 11 O.S.2001, 51-109. Even if this were so, the Interest Arbitration Board has no authority to sustain a Motion to Strike. By sustaining the Motion to Strike, the Interest Arbitration Board essentially deleted every provision of City's last best offer. This action disregards the provisions of 11 O.S. Supp.2004, § 51-108(A)(4) not to modify, add to or delete from a last best offer.
¶ 19 The Interest Arbitration Board did not merely select one last best offer over another, which is its statutory duty under 11 O.S. Supp.2004, 51-108, it removed City's last best offer from any consideration at all as if City's last best offer had been untimely submitted. This is further evidenced by Interest Arbitration Board's later action approving IAFF's ballot which only had IAFF's last best offer instead of including both last best offers as is required under 11 O.S. Supp. 2004, § 51-108(C), which provides:
". . . . The ballot shall inform the voters that they must choose either the last best offer of the bargaining agent or the last best offer of the corporate authorities. The last best offer receiving a majority of the votes shall become the agreement of the parties."
This Court has previously held an agency created by statute may exercise only those powers granted and may not expand those powers by its own authority. City of Hugo v. State ex rel. Public Employees Relations Bd., 1994 OK 134, ¶ 15, 886 P.2d 485, 492. That reasoning applies to an interest arbitration board as well. The Interest Arbitration Board exceeded its statutory authority in sustaining IAFF's Motion to Strike. To allow such a result would be against the plain language and intent of the Fire and Police Arbitration Act and would make collective bargaining meaningless. We find for all of these reasons the Interest Arbitration Board exceeded its statutory authority, and affirm the trial court's ruling holding the Decision was void and/or invalid, unenforceable and vacated.

City's Second Claim for Relief
¶ 20 The trial court dismissed, without prejudice, as moot, City's Motion for Summary Judgment on its Second Claim for Relief because of its earlier ruling on City's First Claim for Relief. City is the party appealing this ruling. In City's Exhibits "B" (Summary of the case) and "C" (Issues to be raised on appeal) attached to its Petition in Error, City states the sole purpose for its appeal is to protect itself in case this Court reverses the trial court's decision on City's Motion for Summary Judgment on its First Claim for Relief. City asks this Court to dismiss its appeal as moot if we affirm the trial court's decision on City's First Claim for Relief. Because we affirm the trial court's ruling on City's Motion for Summary Judgment *684 on its First Claim for Relief, we likewise affirm the trial court's dismissal without prejudice of City's Motion for Summary Judgment on its Second Claim for Relief.

IAFF's Motion to Remand to Arbitration Board
¶ 21 On August 25, 2010, IAFF filed a Motion to Remand to Arbitration Board. IAFF requested the trial court to remand back to the Interest Arbitration Board to clarify and/or amend its Decision. In its response, City argued because the trial court held the Decision was void and the jurisdiction of the Interest Arbitration Board over this matter had expired, the matter could not be remanded back to the Interest Arbitration Board to amend or clarify a void decision. On November 19, 2010, the trial court entered its order denying IAFF's Motion to Remand. The Journal Entry of Judgment denying IAFF's Motion to Remand was incorporated into the Final Order on the same day, November 19, 2010. We have affirmed the trial court's order finding the Interest Arbitration Board Decision is void, and the statutory jurisdiction of the Interest Arbitration Board in 11 O.S. § 51-108 has expired. Therefore, we affirm the trial court's order denying IAFF's Motion to Remand to Arbitration Board.

CONCLUSION
¶ 22 The trial courts' Final Order in favor of City on its First Claim for Relief, dismissing City's Second Claim for Relief without prejudice and denying IAFF's Motion to Remand to Arbitration Board, is affirmed.
THE TRIAL COURT IS AFFIRMED
¶ 23 All Justices concur.
NOTES
[1] The exact date of the Interest Arbitration Board Decision and Award is a point of contention that was never affirmatively determined by the district court. IAFF argues the date of the Decision and Award was on September 4, 2009 and City argues the date was on September 7, 2009. The date of the Decision and Award is relevant only to City's Second Claim for Relief. However, the trial judge found the date did not matter when she granted City's Motion for Summary Judgment On its First Claim for Relief. Later, she dismissed, without prejudice, City's Motion for Summary Judgment on its Second Claim for Relief as moot.
[2] Plaintiff City's Motion for Summary Judgment On Its First Claim for Relief and Brief in Support, filed May 6, 2010; Plaintiff City's Motion for Summary Judgment On Its Second Claim for Relief and on the IAFF's Counterclaim and Brief in Support, filed September 13, 2010.
[3] This Journal Entry of Judgment was entered on August 6, 2010, and was later incorporated into the trial court's Final Order on November 19, 2010.
[4] 1. Comparison of wage rates, insurance, retirement, other fringe benefits or hourly conditions of employment of the fire department or police department in question with prevailing wage rates or hourly conditions of employment of skilled employees of the building trades and industry in the local operating area involved;.

2. Comparison of wage rates, insurance, retirement, other fringe benefits or hourly conditions of employment of the fire department or police department in question with wage rates or hourly conditions of employment maintained for the same or similar work of employees exhibiting like or similar skills under the same or similar working conditions in the local operating area involved;
3. Comparison of wage rates, insurance, retirement, other fringe benefits or hourly conditions of employment of the fire department or police department in question with wage rates or hourly conditions of employment of fire departments or police departments in cities, towns or other political subdivisions of comparable size and economic status both within and without the State of Oklahoma;
4. Interest and welfare of the public and revenues available to the municipality; or
5. Comparison of peculiarities of employment in regard to other trades or professions, including specifically:
a. hazards of employment,
b. physical qualifications,
c. educational qualifications,
d. mental qualifications, and
e. job training and skills.
[5] 1977 Okla.Sess.Laws, c. 256, § 51-109; eff. July 1, 1978.
[6] 1994 Okla.Sess.Laws, c. 139, § 1; SB 1173 (1994).