2013 OK CIV APP 57

**CITY OF NORMAN, Oklahoma, a municipal corporation, Plaintiff/Appellant,**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 2067, Defendant/Appellee.**

**No. 109,447.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 28, 2013.

Certiorari Denied June 3, 2013.

---

Charles S. Plumb, Jared M. Burden, McAfee & Taft, A Professional Corporation, Tulsa, Oklahoma, and Jeff Harley Bryant, City Attorney, Rick Knighton, Assistant City Attorney, Norman, Oklahoma, for Plaintiff/Appellant.

James R. Moore, Timothy J. Synar, James R. Moore & Associates, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

JOHN F. FISCHER, Presiding Judge.

¶ 1 This appeal results from an arbitration proceeding between the City of Norman and the International Association of Firefighters, Local 2067 (Union) over a proposed election for June 14, 2011, to determine the terms of their contract for the July 1, 2010 to June 30, 2011 fiscal year. The City filed this litigation in the district court to challenge the legality of the ballot selected for that election but was unsuccessful in its request to have the district court declare the ballot selected by the Arbitration Board invalid. The City appeals the Order of the district court granting the Union's motion to dismiss this litigation and denying the City's motion for summary judgment. The Union also filed a motion to dismiss this appeal, noting that the City did not proceed with the June 14, 2011, election. The Union argues that the City's appeal is moot because no election can now be held to resolve the parties' dispute. In its response, the City points to exceptions to the mootness doctrine where the issue is of broad public interest or the challenged event is capable of repetition but likely to evade judicial review. Although we hold that the City's appeal is moot with respect to the ballot that can be used for the June 14, 2011 election, we will decide this appeal with respect to one issue: whether the Arbitration Board and the district court correctly interpreted Title 11 O.S. 2011 § 51–108 in selecting the ballot proposed by the Union for the June 14, 2011 election. We hold that they did not. Therefore, we deny the Union's motion to dismiss the appeal.

## BACKGROUND

¶ 2 The parties began collective bargaining with respect to the terms of the contract by which the Union's members would be employed for the July 1, 2010 to June 30, 2011 fiscal year as required by the Fire and Police Arbitration Act (FPAA), 11 O.S.2011 §§ 51–101 to 51–113. They were able to reach an agreement on all but three terms of the contract: compensation, step increases and incentive pay. The difference between the parties with respect to the unresolved issues was stipulated to be $330,000. According to testimony at the arbitration hearing, this difference resulted from adding the $80,000 increase in compensation proposed by the Union and the $250,000 decrease in compensation contained in the City's proposed contract. The FPAA provides the method by which such unresolved issues will be determined. "In the event that the [Union] and the [City] are unable ... to reach an agreement on a contract, any and all unresolved issues shall be submitted to arbitration, upon request of either party." 11 O.S.2011 § 51–106.

¶ 3 The arbitration procedure is set out in section 51–108 of the Act:

A. 1. The arbitration board acting through its chair shall call a hearing to be held within ten (10) days after the date of the appointment of the chair and shall, acting through its chair, give at least seven (7) days' notice in writing to each of the other two arbitrators, the bargaining agent and the corporate authorities of the time and place of such hearing.

2. At least seven (7) days before the date of the hearing the corporate authorities and the bargaining agent shall submit to

each other and to the arbitration board members a written arbitration statement listing all contract terms which the parties have resolved and all contract issues which are unresolved. Each arbitration statement shall also include a final offer on each unresolved issue. The terms and offers contained in the arbitration statements shall be known collectively as each party's last best offer.

3. The hearing shall be informal and the rules of evidence prevailing in judicial proceedings shall not be binding. Any and all documentary evidence and other data deemed relevant by the arbitrators may be received in evidence. The arbitrators shall have the power to administer oaths and to require by subpoena the attendance and testimony of witnesses, the production of books, records, and other evidence relative or pertinent to the issues presented to them for determination. A hearing shall be concluded within twenty (20) days from the time of commencement.

4. Within seven (7) days after the conclusion of the hearing, a majority of the arbitration board members shall select one of the two last best offers as the contract of the parties. The criteria to be used by the board in determining which offer to select shall be limited to paragraphs 1 through 5 of Section 51–109 of this title. The arbitration board may not modify, add to or delete from the last best offer of either party. Written notice of the selection decision shall be mailed or delivered to the bargaining agent and the corporate authorities.

B. If the city's last best offer is not selected by the arbitration board, that party may submit the offers which the parties submitted to the arbitration board to the voters of the municipality for their selection by requesting a special election for that purpose. The request for an election must be filed with the clerk of the municipality within ten (10) days of the date of the written decision of the arbitration board. Written notice of the filing of the request shall be given to the bargaining agent. If a request for an election is not filed in a timely manner, the board's selection decision shall be final, and the last

best offer it selected shall constitute the agreement of the parties.

C. Upon receiving a request for an election pursuant to the provisions of this section, the clerk shall notify the mayor and governing body of the request. Within ten (10) days of such notification the municipal authorities shall call for a special election. The election shall be governed by the state laws on special municipal elections. Only residents of the municipality shall be eligible to vote in said election. The ballot shall inform the voters that they must choose either the last best offer of the bargaining agent or the last best offer of the corporate authorities. Within twenty (20) days of the date of the decision to call for the election, the municipal authorities and the bargaining agent shall agree on a ballot. If no agreement is reached within that time, each party shall present a proposed ballot to the arbitration board. The parties shall present their ballot to the board no later than seven (7) days after the aforementioned twenty-day period. The board shall consider the proposed ballots and shall select one or the other within seven (7) days of the date of receipt of the parties' proposed ballots. The last best offer receiving a majority of the votes shall become the agreement of the parties.

D. Concerning issues relating to money, such ballot shall clearly state the total dollar amount of the offer from the corporate authority and the total dollar amount of the offer from the bargaining agent. Such ballot shall also disclose the percentage of increase or decrease both offers have over or under the last contract of the two parties.

E. Agreements which are reached as a result of selection by the arbitration board or by election shall be effective on the first day of the fiscal year involved regardless of the date of the final selection.

¶ 4 Pursuant to this statute, both parties submitted their "last best offers" for the 2010–2011 fiscal year to the Arbitration Board. On November 11, 2010, the Arbitration Board selected the offer submitted by the Union. The City exercised its right pursuant to section 51–108(B) to have the Cleve-

land County Election Board hold an election for the purpose of permitting City voters to decide which contract to select. The City submitted a timely request to the City Clerk for that election. And, within the required ten days, the City Council adopted a resolution authorizing the Mayor to call for a special election to decide the contract issue. The parties were unable to agree on a ballot for the election and each submitted a proposed ballot to the Arbitration Board as required by section 51–108(C). On January 3, 2011, the Board selected the ballot proposed by the Union.

¶ 5 The City filed this litigation on January 19, 2011. On March 8, 2011, the City Council modified its previous election resolution to extend the date for notifying the Cleveland County Election Board to schedule the election. The amended resolution contemplated a June 14, 2011, election, the last date available for a municipal election in the 2010–2011 fiscal year. *See* 26 O.S. Supp.2005 § 3–101(B) (the statute applicable when this election would have occurred). That election would have determined the parties' contract for the fiscal year ending June 30, 2011. "Agreements which are reached as a result of ... election shall be effective on the first day of the fiscal year involved regardless of the date of the final selection." 11 O.S.2011 § 51–108(E). *Accord, City of Oklahoma City v. Int'l Ass'n of Fire Fighters, Local 157,* 2011 OK 29, ¶ 7, 254 P.3d 678, 680–81.

¶ 6 The district court's order that is the subject of this appeal was entered April 11, 2011. The City Council met on April 12, 2011, and decided not to pursue the contract election, but rather to appeal the district court's decision. As previously stated, the Union moved to dismiss arguing that the

City's appeal was moot because it did not proceed with the June 14 election. After the City filed its response, the Supreme Court entered an order deferring consideration of the Union's motion until the decisional stage.

## MOOTNESS

¶ 7 As the Union points out in its motion to dismiss this appeal, the election requested by the City is "governed by the state laws on special municipal elections." 11 O.S.2011 § 51–108(C). For the June 14, election to be held as contemplated, the City was required to notify the Cleveland County Election Board sixty days in advance or no later than April 15, 2011. 26 O.S. Supp.2005 § 3–102(A). The Union argues in its motion that because the City did not do so, no election can now be held to determine the 2010–2011 contract between these parties.[1] The City does not concede this point but contends that the legality of any election held with the ballot selected by the Arbitration Board would have been questionable and that it had "an obligation to proceed with an election using a lawful ballot."

¶ 8 Clearly, no election can now be held on June 14, 2011. Consequently, the issue of which ballot should have been used for that election is moot. "Mootness is a state or condition which prevents the appellate court from rendering relief." *State ex rel. Okla. Firefighters Pension and Ret. Sys. v. City of Spencer,* 2009 OK 73, ¶ 4, 237 P.3d 125, 129. Nonetheless, as the City correctly contends, there are exceptions to the mootness doctrine. "Oklahoma jurisprudence recognizes two exceptions to the mootness doctrine: (1) when the appeal presents a question of broad public interest and (2)

---

1. According to the Union, the Arbitration Board's selection of the Union's proposed contract is now final. We note a potential conflict in the FPAA regarding the terms of the parties' 2010–2011 contract. Title 51 O.S.2011 § 51–105 provides: "[U]ntil a new agreement is reached, the currently existing written agreement shall not expire and shall continue in full force and effect." This provision would suggest that the terms of the 2009–2010 agreement apply for the 2010–2011 fiscal year. However, section 51–108(B) provides that if a timely request for election is not received: "the board's selection decision shall be final, and the last best offer it

selected shall constitute the agreement of the parties." This section would suggest the Union's proposed contract selected by the Board controls. However, section 51–108(B) does not address the circumstances in this case where a timely request is received but an election has not yet been held. To further confuse the matter, section 51–108(E) provides: "Agreements which are reached as a result of selection by the arbitration board or by election shall be effective on the first day of the fiscal year involved regardless of the date of the final selection." Nonetheless, neither party has directly raised this issue nor is it necessary to our disposition of this appeal.

when the challenged event is 'capable of repetition, yet evading review.'" *Id.* (citing *Payne v. Jones,* 1944 OK 86, 146 P.2d 113). With respect to the first exception, the relationship between the municipalities of this State and their police and firefighter employees and the terms of the contract by which they will be employed is certainly of broad public interest. It is of sufficient importance to have been defined in the public policy of this State. *See* 11 O.S.2011 § 51–101. With respect to the second, most of the time limits in section 51–108 are seven days and all are less than twenty days. Because of that circumstance, we find that the legality of any ballot used in those elections may often evade appellate review until after the proposed election. If, as the City points out, the ballot is invalidated on appeal, the result of any election conducted pursuant to that ballot is subject to challenge. To proceed with an election in such circumstances would subject the parties, election officials and municipal voters to unnecessary time and expense. For these reasons, we find that the City's appeal satisfies both exceptions to the mootness doctrine and we will decide this appeal limited to the issue of the legality of the Union's ballot.

## STANDARD OF REVIEW

■ ¶ 9 The dispositive issue in this appeal requires the interpretation of 11 O.S. 2011 § 51–108. Determining "the meaning and intent of legislative enactments" involves a question of law. *State ex rel. Dep't of Human Servs. v. Baggett,* 1999 OK 68, ¶ 4, 990 P.2d 235, 238. "A legal question involving statutory interpretation is subject to de novo review, *i.e.,* a non-deferential, plenary and independent review of the trial court's legal ruling." *Heffron v. District Court of Oklahoma County,* 2003 OK 75, ¶ 15, 77 P.3d 1069, 1076 (citing *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5).

## ANALYSIS

¶ 10 "The primary goal of statutory construction is to ascertain and follow legislative intention." *Samman,* 2001 OK 71, ¶ 13, 33 P.3d at 307 (footnote omitted). Legislative intent is determined from the whole act in light of its general purpose and objective. *Okla. Pub. Emps. Ass'n v. State ex rel. Okla. Office of Pers. Mgmt.,* 2011 OK 68, ¶ 12, 267 P.3d 838, 845. The general purpose and objective of the arbitration provisions of the FPAA in which the specific statutory provision at issue in this appeal occurs adds some complexity to the process of ordinary statutory construction but is important to the proper interpretation of the dispositive statute.

■ ¶ 11 Between private parties, arbitration results from the voluntary agreement of the parties to forgo traditional means of resolving their disputes. Parties can only be forced to arbitrate if they have agreed to do so. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995); *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.,* 2007 OK 12, ¶ 22, 160 P.3d 936, 944. And, if there is an agreement, arbitration will be confined only to those issues they agreed to arbitrate. *Kaplan,* 514 U.S. at 945, 115 S.Ct. at 1925; *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.,* 2007 OK 12, ¶ 33, 160 P.3d at 948. This principle is based on the fundamental contract law principle that an agreement to arbitrate requires an exchange of consideration. *Thompson v. Bar–S Foods Co.,* 2007 OK 75, ¶ 33, 174 P.3d 567, 577 (employer's unilateral right to change terms of arbitration agreement was an illusory promise). This principle is no less fundamental when governmental entities and their employees are compelled to forgo certain rights available to others and arbitrate their disputes. But, they can be compelled to do so only according to the specific statutory procedures established for that arbitration. *City of Oklahoma City v. Int'l Ass'n of Fire Fighters, Local 157,* 2011 OK 29, 254 P.3d 678 (holding an arbitration board exceeded its statutory authority by striking a city's "last best offer").

¶ 12 The procedure by which police officers, firefighters and their municipal employers are compelled to resolve their disputes regarding the terms of their employment contract are set forth in the FPAA. The Act provides that police officers and firefighters are denied the right to strike so that cities

can be assured of the continued service of these essential employees until the dispute is resolved.

The protection of the public health, safety and welfare demands that the permanent members of any paid fire department or police department in any municipality not be accorded the right to strike or engage in any work stoppage or slowdown. This necessary prohibition does not, however, require the denial to such employees of other well-recognized rights of labor such as the right to organize, to be represented by a collective bargaining representative of their choice and the right to bargain collectively concerning wages, hours and other terms and conditions of employment; and such employees shall also have the right to refrain from any and all such activities.

. . . .

The establishment of this method of arbitration shall not, however, in any way whatever, be deemed to be a recognition by the state of compulsory arbitration as a superior method of settling labor disputes between employees who possess the right to strike and their employers, but rather shall be deemed to be a recognition solely of the necessity to provide some alternative procedure for settling disputes where employees must, as a matter of public policy, be denied the usual right to strike.

11 O.S.2011 § 51–101(A) & (D). Likewise, cities cannot unilaterally determine the terms of their police and firefighter contracts but must defer to the arbitration and election provisions of the FPAA. 11 O.S.2011 § 51–106. Consequently, cities are prevented from refusing to engage in collective bargaining or "locking out" their police and firefighter employees. 11 O.S.2011 § 51–102(6). In exchange for these traditional means of resolving labor disputes available to private parties, municipalities and their police and firefighter unions acquire "the mutual obligation . . . to meet at reasonable times . . . to confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder . . . ." 11 O.S.2011 § 51–102(5) (defining "collective bargaining" for purposes of the FPAA). That obligation does not, however, "compel either party to agree to a proposal." *Id.* Nonetheless, the obligation to attempt to resolve labor disputes in good faith is fundamental to the FPAA.

¶ 13 This record clearly demonstrates that the parties were unable to agree on a contract for the 2010–2011 fiscal year. In that circumstance, the FPAA provides that the City can have its voters determine the contract by which City firefighters would be employed for that term. 11 O.S.2011 § 51–108(B). The FPAA includes within the parties' requirement to bargain collectively, the obligation to confer in good faith to draft the ballot for that election. Again, the parties were not able to agree on a proposed ballot for the June 14 election. Consequently, each party had the right to, and did, submit a proposed ballot to the Arbitration Board. 11 O.S.2011 § 51–108(C). If, as in this case, the unresolved issues between the parties relate to money:

[S]uch ballot shall clearly state the total dollar amount of the offer from the corporate authority and the total dollar amount of the offer from the bargaining agent. Such ballot shall also disclose the percentage of increase or decrease both offers have over or under the last contract of the two parties.

11 O.S.2011 § 51–108(D).

¶ 14 The ballots submitted by the parties are identical in almost all respects including their descriptions of the three unresolved issues. The primary difference is that the City's proposed ballot included the total dollar amount and required percentage of increase for the entire contract proposed by each party.

The total dollar amount of the City's offer, including wages and benefits, is $12,248,323.74, which is an increase of 3.20 percent from the agreement for fiscal year beginning July 1, 2009 and ending June 30, 2010.

. . . .

The total dollar amount of the Union's offer, including wages and benefits, is $12,614,995.11, which is an increase of 6.29 percent from the agreement for fiscal year

beginning July 1, 2009 and ending June 30, 2010.

The Union's proposed ballot listed only the total dollar amount and percentage of difference of the City's proposed contract with respect to the three unresolved issues. The Union's proposed ballot stated that its proposed contract involved "no change" from the previous contract with respect to these issues. The portions of the Union's proposed ballot corresponding to quoted portion of the City's ballot state:

> The total dollar amount of the City's offer on the unresolved issues, [sic] is a reduction of $330,000 in the cost of the last contract, amounting to a decrease of 2.78%.
>
> . . . .
>
> The total dollar amount of the [Union's] "no change" offer on the unresolved issues is zero. The [Union's] "no change" offer on the unresolved issues causes no increase or decrease in the cost of the last contract.

¶ 15 The Arbitration Board selected the ballot proposed by the Union, concluding that the City's proposed ballot could raise questions in the minds of voters not answered by the ballot. As stated in its January 3, 2011, decision, a majority of the Arbitration Board based its decision on the following statement: "The last best offer presented by each Party at the arbitration hearing should be the statements of the unresolved issues on the ballot." This interpretation is, at best, confused. Certainly, only unresolved issues will be presented during the arbitration hearing. 11 O.S.2011 § 51–106. However, to the extent the majority would limit a party's "last best offer" to the unresolved issues, it ignores the clear language of section 51–108(A)(2). An arbitration statement of a party shall list "all contract terms which the parties have resolved and all contract issues which are unresolved … [and] shall also include a final offer on each unresolved issue. The terms and offers contained in the arbitration statements shall be known collectively as each party's last best offer." 11 O.S.2011 § 51–108(A)(2). Therefore, the "last best offer" of a party necessarily includes both contract terms that have been resolved and those that are unresolved.

¶ 16 In granting the Union's motion to dismiss, the district court interpreted the word "offer" in section 51–108(D) to mean something different from the term "last best offer" defined in section 1–108(A)(2). Based on this interpretation, the district court agreed with the majority of the Arbitration Board that a ballot should only address the differences between the parties' positions as to the disputed issues. There is a principle of statutory construction that would permit different meanings of substantially similar terms, the argument being that if the Legislature had intended the word "offer" to refer to the entire proposal rather than just the difference between the offers on disputed issues it would have used the term "last best offer" defined in section 51–108(A)(2). We find overriding principles of statutory construction required for the proper construction of section 51–108.

¶ 17 Although section 51–108(D) applies solely to that portion of a party's "last best offer" relating to "issues of money," that is the only limitation in the language of the statute. The first sentence of section 51–108(D) requires a proposed ballot to "clearly state the total dollar amount of the offer," not just the total dollar amount of the offer on the unresolved issues. The second sentence of section 51–108(D) provides that a proposed ballot "shall also disclose the percentage of increase or decrease both offers have over or under the last contract of the two parties." Again, there is no limitation in this language to that portion of the parties' last contract now in dispute. The "cardinal rule of statutory construction is to begin with consideration of the language used and courts should not read into a statute exceptions not made by the Legislature." *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 1988 OK 117, ¶ 7, 764 P.2d 172, 179. Further, by requiring the proposed ballot to disclose the percentage difference with respect to the previous contract, it is apparent the Legislature intended that disclosure to be meaningful for voters. "[S]tatutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits." *Id.* To be meaningful, the difference between a present

offer and a previous contract, the percentage must relate to offers of equal value, in this case, the total dollar amount of the contracts being compared.

¶ 18 This construction is also consistent with the language of section 51–108(B): "If the city's last best offer is not selected by the arbitration board, that party may submit the offers which the parties submitted to the arbitration board to the voters of the municipality...." Here, "offers" can only have reference to the "last best offer" contained in each party's arbitration statement submitted to the Arbitration Board pursuant to section 51–108(A)(2). "It is a familiar rule of constitutional and statutory construction that sections are to be construed so as to give effect to every part thereof, that each provision of a section should be construed so as to harmonize with all the others...." *Oklahoma Natural Gas Co. v. State ex rel. Vassar,* 1940 OK 137, ¶ 10, 187 Okla. 164, 101 P.2d 793, 796. Therefore, the term "offer" as used in section 51–108(D) must have the same meaning as the term "last best offer" defined in section 51–108(A)(2).

■ ¶ 19 Not only did the Arbitration Board misinterpret section 51–108, but also it exceeded its jurisdiction in selecting the ballot proposed by the Union. A majority of the Arbitration Board found that the City's ballot included "a cost and percentage increased [sic] to the City that was not submitted at the arbitration hearing and that can be misleading to the residents." If the Arbitration Board rejected the City's proposed ballot for this reason, its statutory authority to do so is extremely problematic. *Cf., City of Oklahoma City v. Int'l Ass'n of Fire Fighters, Local 157,* 2011 OK 29, 254 P.3d 678. The *Fire Fighters, Local 157* case concerned a decision by an arbitration board to strike the city's last best offer because it contained terms not presented during collective bargaining. When selecting between two offers, the discretion of an arbitration board is clearly limited. "The criteria to be used by the board in determining which offer to select shall be limited to paragraphs 1 through 5 of Section 51–109 of this title." 11 O.S.2011 § 51–108(A)(4). The Supreme Court held that the arbitration board based its decision to strike the city's offer on factors other than those required by statute and exceeded its

authority because an "arbitration board may not modify, add to or delete from the last best offer of either party." *Fire Fighters, Local 157,* 2011 OK 29, ¶ 18, 254 P.3d at 683.

¶ 20 Here, we are concerned with a proposed ballot rather than a party's proposed contract. There is no language in section 51–108 specifying the criteria by which a "board shall consider the proposed ballots and shall select one or the other...." 11 O.S.2011 § 51–108(C). Further, there is no language specifically preventing an arbitration board from modifying, adding to or deleting any language of a party's proposed ballot title. And, in this case, the Arbitration Board did not strike the City's proposed ballot although the apparent basis for its decision accomplished the same result. Nonetheless, we find *Fire Fighters, Local 157* instructive. If an arbitration board has the authority to reject a party's proposed ballot because it might be misleading, "collective bargaining would be meaningless." *Fire Fighters, Local 157,* 2011 OK 29, ¶ 19, 254 P.3d at 683. Nothing in the FPAA subjects the City to arbitration on those terms.

¶ 21 It may be that the City's proposed ballot is misleading and deceptive as characterized by the Arbitration Board majority. If so, the City may have failed to "confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder" (11 O.S.2011 § 51–102(5)) and "agree on a ballot." 11 O.S.2011 § 51–108(C). That would constitute an unfair labor practice over which the Employees Relations Board is granted exclusive statutory authority. 11 O.S.2011 § 51–104b. *See also Fire Fighters, Local 157,* 2011 OK 29, ¶ 14, 254 P.3d at 682. Absent that finding, the FPAA reserves to the City's voters to determine whether a ballot is misleading. And as the Union observed, such issues can be addressed in the campaign preceding the election, where voters who have questions about the ballot can seek to have those questions answered.

¶ 22 The only statutory authority granted to an arbitration board with respect to the parties' proposed ballots is to consider the two alternatives and select one within seven days. 11 O.S.2011 § 51–108(C). That does not mean that an arbitration board has no

discretion when selecting a proposed ballot. It may reject a proposed ballot that is not filed within the time limit prescribed by section 51–108. It may also reject a proposed ballot that does not comply with section 51–108(D) because it fails to clearly state the total dollar amount of the parties' last best offer or the percentage increase or decrease of both last best offers compared to the parties' last contract. Beyond that, an arbitration board's statutory authority is limited to determining if the ballot informs voters "that they must choose either the last best offer of the bargaining agent or the last best offer of the corporate authorities." 11 O.S.2011 § 51–108(C). If both proposed ballots satisfy all statutory requirements, the arbitration board is charged with selecting one. There is no authority in section 51–108 for an arbitration board to base its selection on the perceived merits of a party's contract or the deceptiveness of its proposed ballot.

¶ 23 Further, and although the Arbitration Board found that the Union's proposed ballot was not misleading, that statement is not supported by the record. During the hearing conducted by the Arbitration Board, a witness testified that the stipulated $330,000 difference between the two offers resulted from adding the $250,000 cut in compensation proposed by the City and the $80,000 increase in compensation contained in the Union's last best offer. Consequently, the Union's "no change" offer would have increased the compensation paid by the City by $80,000.

¶ 24 More importantly, and as noted by the dissenting member of the Arbitration Board, the Union's proposed ballot did not provide the information required by section 51–108(C). With respect to its description of the City's last best offer, the Union's proposal did not state the total dollar amount of the offer but only the $330,000 the parties stipulated was the difference between the two offers as to the unresolved issues. With respect to its own proposed contract, the Union's ballot did not state any dollar amount: "The total dollar amount of the [Union's] 'no change' offer on the unresolved issues is zero." It does not state the "total dollar amount" of either party's "last best offer." Further, the Union's proposed ballot does not "disclose the percentage of increase or decrease" between either of the party's last best offers and the contract for the previous year. We hold that the Arbitration Board only had authority to select a proposed ballot if that ballot contained the information required by section 51–108. Because the Union's ballot did not comply with that statute, the Arbitration Board exceeded its jurisdiction in selecting the Union's ballot for the June 14, 2011 election.

## CONCLUSION

¶ 25 The ballot proposed by the Union for the June 14, 2011 election did not provide the information required by 11 O.S.2011 § 51–108. Therefore, the Arbitration Board exceeded its statutory authority in selecting that ballot. The Order of the district court granting the Union's motion to dismiss is reversed and the Order denying the City's motion for summary judgment is vacated.

¶ 26 **REVERSED IN PART AND VACATED IN PART.**

BARNES, V.C.J., and WISEMAN, J., concur.