2013 OK 66

**JOE BROWN COMPANY, INC. and American Interstate Insurance Company, Petitioners,**

v.

**Adrian G. MELTON, Jr. and The Workers' Compensation Court, Respondents.**

No. 109,306.

Supreme Court of Oklahoma.

July 2, 2013.

Robert Paczkowski, Zlotogura & Zlotogura, Edmond, Oklahoma, for Petitioners.

Richard A. Bell, Heather Adrienne Lehman, The Bell Law Firm, Norman, Oklahoma, for Respondents.

WINCHESTER, J.

¶1 The claimant, Adrian Melton, was a truck driver for the employer, Joe Brown Company, Inc. On November 16, 2009, in the process of washing out his truck in preparation for a load he was to transport, a two-to-three hundred pound wash rack fell on him, causing injury. On October 15, 2010, the Workers' Compensation Court found that he had been injured while working within the

scope of his employment. He was awarded eleven weeks of temporary total disability (TTD), and also granted permanent partial disability (PPD) for his low back and neck injuries and for psychological overlay. The employer appealed to a three-judge panel, which vacated some parts of the award and sustained others.

¶ 2 Employer then sought review of the panel's decision. On November 18, 2011, the Court of Civil Appeals (COCA) vacated and remanded the award for permanent partial impairment concerning the claimant's low back and neck for failure to comply with the AMA Guides, 5th Edition. In addition, that court decided the "any competent evidence" standard of review was inconsistent with 85 O.S.2011, 340(D). The new statute became effective on August 26, 2011. In relevant part, the statute provides:

> "After the effective date of this act, *regardless of the date of injury,* the Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:
>
> "1.   The Court acted without or in excess of its powers;
>
> "2.   The order or award was contrary to law;
>
> "3.   The order or award was procured by fraud; or
>
> "4.   *The order or award was against the clear weight of the evidence.*"

Emphasis added.[1]

¶ 3 Accordingly, the COCA implemented the "against the clear weight of the evidence" standard. The claimant seeks review, arguing that the COCA incorrectly applied the 2011 standard instead of the any competent evidence standard, which was the relevant standard of review before the 2011 statutory change. *See Parks v. Norman Municipal Hospital,* 1984 OK 53, ¶ 13, 684 P.2d 548, 552. Both parties petitioned for certiorari, and this Court granted both petitions.

¶ 4 Nine days after the predecessor statute to § 340(D), 85 O.S.Supp.2010, 3.6, became effective, the COCA applied the "any competent evidence" standard of review in *Dunlap v. Multiple Inj. Trust Fund.* This Court, by order, held that the COCA properly applied the any competent evidence standard, because the claim for benefits occurred prior to the effective date of the amendment, and the amendment applies prospectively. *Dunlap v. Multiple Inj. Trust Fund,* 2011 OK 14, ¶ 1, 249 P.3d 951, 952. The *Dunlap* holding was also cited as authority in *Nomac Drilling LLC v. Mowdy,* 2012 OK 45, ¶ 8, 277 P.3d 1282, 1284. More recently, this Court in *Williams Companies, Inc. v. Dunkelgod,* 2012 OK 96, ¶ 11, 295 P.3d 1107, 1111, construed 85 O.S.2011, 340(D) for the first time. The Court held that the standard of review determined on the date of the injury is a substantive right requiring prospective application. *Dunkelgod,* 2012 OK 96, ¶ 18, 295 P.3d 1107, 1113.

¶ 5 Similar to the circumstances in *Dunlap,* the claimant's injuries took place before the effective date of the new statute. Indeed, the Court of Civil Appeals acknowledged that the new standard did not go into effect until "[s]hortly after the completion of briefing in this case...." Opinion at 2, ¶ 2. Because the injury occurred before the new standard went into effect, the "any competent evidence" standard of review is the correct standard to be applied.

¶ 6 Regarding temporary total disability, the COCA correctly acknowledged that the benefits are limited to eight weeks for non-surgical, soft tissue injuries, "unless there is objective medical evidence of a permanent anatomical abnormality." 85 O.S.Supp.2007, 22(3)(d)[2]; *Bed Bath & Beyond, Inc. v. Bonat,* 2008 OK 47, ¶ 9, 186 P.3d 952, 955. However, § 22(3)(e) provides, in describing what is included in the phrase "permanent anatomical abnormality," that "the Court may consider if there is credible

1.   The change in the standard of review from "any competent evidence" to "clear weight of the evidence" became effective by the amendment to 85 O.S.2001, 3.6 enacted by 2010 Okla. Sess.Laws, ch. 403, § 1, The legislature repealed § 3.6 in 2011 Okla.Sess.Laws, ch. 318, § 87, which retained the change in the standard of review, and added the language making the change retroactive.

2.   Repealed by 2011 Okla.Sess.Laws, ch. 318, § 87.

medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired."[3] The COCA observed that both claimant's and employer's doctors acknowledged that the claimant was at maximum medical improvement, and released him for work with permanent restrictions. The COCA correctly concluded that the award by the three-judge panel should be sustained. Although the COCA applied the incorrect standard of review, an application of the correct standard does not change the result.

¶ 7 Pertaining to the claimant's award for low back and neck impairment, the COCA vacated and remanded for "cure of evidentiary deficits." We conclude that the standard of "any competent evidence" supports the award by the three-judge panel and should be sustained. As for the contention that pertains to continuing medical maintenance, the portion of the award recommending it was sustained by the three-judge panel, by the COCA, and we agree that it should be sustained.

¶ 8 Citing *Adecco, Inc. v. Dollar*, 2011 OK CIV APP 43, 254 P.3d 729, (hereinafter *Dollar*) the COCA sustained an award of psychological overlay to the claimant. In the *Dollar* case the same chiropractor as in the case now before us, Dr. Hugh G. McClure, D.C., testified to Patricia Dollar's psychological overlay. As in the claim now before this Court, Dr. McClure testified that he administered the Zung Depression Test and that Dollar had minimum to mild depression. The trial court found that Dollar had sustained a 3% PPD psychological overlay. The COCA, Division No. 4, sustained the award.

¶ 9 The employer in the *Dollar* case argued that the report of Dr. McClure was deficient because (1) the Zung Depression Test had not been shown to constitute "objective medical evidence" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and (2) because a chiropractor is not qualified to testify as an expert to the degree of a patient's psychological impairment resulting from a work-related injury. *Dollar*, 2011 OK CIV APP 43, ¶ 12, 254 P.3d at 732.

¶ 10 The issue is whether a chiropractor's scope of expertise is limited to the areas of practice covered by a chiropractor's license under Oklahoma Statutes. The statutes provide by law for the licensing of chiropractors. The scope of the practice of a chiropractor is provided by 59 O.S.2011, 161.2(A):

"A. Chiropractic is the science and art that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and includes hygienic, sanitary and therapeutic measures incident thereto in humans. The scope of practice of chiropractic shall include those diagnostic and treatment services and procedures which have been taught by an accredited chiropractic college and have been approved by the Board of Chiropractic Examiners."

¶ 11 In his deposition, which is claimant's exhibit number 2, Dr. McClure admitted, as he was being questioned by Mr. Melton's attorney that he is neither a psychologist nor a psychiatrist, and when asked if he either took, taught, or did any sort of further education in the areas of psychology, psychological teaching or testing, Dr. McClure testified he had taken continuing education in the Worker's Compensation system and other seminars. But he still did not say that any of that training included psychology.

¶ 12 A chiropractor's testimony about a matter within that person's field of professional knowledge qualifies the chiropractor as an expert. The statutes require a chiropractor to be examined in "technical, professional and practical subjects that relate to the practice of chiropractic including, but not limited to, chiropractic principles, anatomy, histology, physiology, symptomatology, orthopedia, chemistry, spinography, diagnosis, sanitation and hygiene, pathology, public health service and adjustology." 59 O.S. 2011, 161.8. The Board of Chiropractic Examiners must "also examine each applicant in the art of chiropractic adjusting, x-ray, diagnostic laboratory procedures, physiological therapeutics and other subjects taught by accredited chiropractic colleges." 59 O.S. 2011, 161.8. Dr. McClure testified that he is on the Board of Chiropractic Examiners, yet

---

3. This language is now included in 85 O.S.2011, 332(M).

346

he did not testify that he had any formal psychological training.

¶ 13 In claimant's exhibit number 1, Dr. McClure reported his conclusion that Mr. Melton had a psychological overlay, that Dr. McClure had administered the Zung Depression Test and that the test indicated Mr. Melton had severe to extreme depression. The report reveals Dr. McClure's opinion that Mr. Melton had a twenty-five percent partial impairment to the body as a whole due to psychological overlay. The three-judge panel found an eighteen percent permanent partial disability to the "whole man psychological overlay" with the parenthetical "depression" and with the additional parenthetical "claimant's credible testimony—Dr. McClure's report—severe and extreme depression —developed from chronic pain syndrome—can't have surgery due to heart."

¶ 14 Title 5, § 161.12(B) prohibits certain acts by chiropractors that are routinely performed by medical doctors: "(5) Performing or attempting to perform major or minor surgery in this state, or using electricity in any form for surgical purposes, including cauterization" and "7. Unlawfully possessing, prescribing or administering any drug, medicine, serum or vaccine."

¶ 15 The COCA's *Dollar* opinion observes that this Court has never specifically held that a licensed chiropractor's scope of expertise, for worker's compensation purposes, should be considered equivalent to that of a medical doctor. Based on that observation, COCA concluded that the Oklahoma legislature had indicated chiropractors were equivalent to medical doctors. *Dollar*, 2011 OK CIV APP 43, ¶ 18, 254 P.3d at 734. That court, as support, cites what has now been codified as 85 O.S.2011, 326(D), which provides: "The term 'physician' as used in this section shall mean any person licensed in this state as a medical doctor, chiropractor, podiatrist, dentist, osteopathic physician or optometrist. The Court may accept testimony from a psychologist if the testimony is requested by the Court."

¶ 16 But § 326(D) does not mean that a chiropractor may diagnose depression because a chiropractor comes within the definition of "physician." A chiropractor is not the

equivalent of a medical doctor who has some training in psychology. Because all of the medical occupations listed in § 326(D) have been defined as physicians does not mean they are equally competent to diagnose depression based on the "physician's" administration of the Zung Depression Test and the patient's oral report to the physician of feelings of depression. If such were the case, a dentist or an optometrist could make the same diagnosis because each is defined in the statute as a "physician."

¶ 17 We conclude that a chiropractor is not qualified as an expert in diagnosing psychological illnesses such as depression. The report of a chiropractor as an expert in the field of psychology, as to a claimant's psychological overlay, is inadmissible and therefore error. The three-judge panel's award of permanent partial disability benefits for psychological overlay and the award of continuing medical maintenance in the form of psychotropic medications are vacated.

**THE DECISION OF THE COURT OF CIVIL APPEALS IS VACATED. THE DECISION OF THE THREE-JUDGE PANEL IS SUSTAINED IN PART AND VACATED IN PART.**

CONCUR: REIF, V.C.J., KAUGER, WINCHESTER, EDMONDSON, TAYLOR, COMBS, GURICH, JJ.

CONCURS IN PART; DISSENTS IN PART: WATT, J.

NOT PARTICIPATING: COLBERT, C.J.