Joe L. BURNS, Petitioner,

v.

SOUTHWESTERN PREFERRED PROPERTIES, INC., Providence Washington Insurance Company and the State Industrial Court of Oklahoma, Respondents.

No. 50915.

Supreme Court of Oklahoma.

June 27, 1978.

Rex D. Brooks, Oklahoma City, for petitioner.

Henry W. Nichols, Jr., Oklahoma City, for respondents.

DOOLIN, Justice:

Petitioner, hereafter claimant, presents two issues for review of an order relating to period of compensation for temporary total disability, directing further treatment by a court appointed physician and disallowing specified medical expenses as unauthorized. The order was modified on en banc appeal, by allowance of compensation for temporary total disability and otherwise affirmed.

The first issue urges error in denying further treatment by a court appointed orthopedic specialist. The second issue attacks propriety of trial court's disallowance of specified charges, incurred during treatment by claimant's selected physician, as unauthorized.

Chronological recitation of examinations, diagnoses and surgical procedures following injury to left knee on June 3, 1974, is unnecessary. After injury claimant was examined in a hospital emergency room and advised to see an orthopedic surgeon if knee did not improve. Claimant telephoned several specialists and finally secured appointment with Dr. H. on June 5, 1974. The doctor took history of injury, including three prior surgeries and upon examination ascertained claimant's knee cap was locked against front face of the femur, coupled with a degenerative process.

Conservative treatment initiated to alleviate pain and roughness under the knee cap was unproductive and surgery was performed June 11, 1974. Continuing treatment for complaints of pain, swelling and buckling or locking of the knee involved further diagnoses and performance of surgical procedures on December 20, 1974, June 6, 1975 and September 2, 1975. Thereafter claimant seemed to improve until seen again October 27, 1975 for pain and inability to straighten the knee although x-ray showed implanted prosthesis was adequate. Dr. H. became ill and unable to continue treatment and claimant was referred to a specialist (Dr. B.).

This surgeon first examined claimant December 1, 1975, after taking history of injury and ensuing treatment and surgeries. Claimant's knee was aspirated and appoint-

ment made for investigative consultation with another specialist. Examination established implanted prosthesis was loose and immediate replacement was necessary to alleviate pain. Claimant was hospitalized and surgery performed December 8, 1975, which disclosed tibial component was loose and had been set too far anteriorly, thus butting against bone of femoral condyle. The component was replaced and claimant was dismissed December 14, 1975, to return after two weeks for removal of sutures and splints.

On January 22, 1976, claimant was walking well with slight pain and well healed wound and was permitted to return to work with limitations on lifting and climbing stairs. On February 19, 1976, claimant still had occasional pain but was performing his job satisfactorily and was to be seen in the future at 6 to 12 months intervals. Maximum recovery had been reached and claimant had sustained 35% permanent partial disability of leg as result of injury and subsequent treatment.

After second hearing (March 17, 1976), an order found claimant had received wages in lieu of compensation, directed payment of reasonable and necessary expenses of medical treatment and awarded compensation for 35% permanent partial disability resulting from injury to left leg. This order was vacated on en banc appeal and the cause remanded for further proceedings.

On November 18, 1976, the case was retried only for determination of temporary total disability. Evidence showed claimant was unable to work between December 1, 1975 and October 12, 1976, when employment was resumed. Other evidence showed in January 1976, following surgery and while still under Dr. B.'s care, claimant learned Dr. H. had resumed practice and voluntarily placed himself under care of Dr. H. without notice to his employer or its insurance carrier. Dr. H. treated claimant with medication unsuccessfully and in May 1976, performed further surgery. Claimant testified because of painful condition of the knee he was unable to wait for court approval, but acknowledged Dr. H. advised femoral knee replacement might be unsuccessful.

Respondents admitted responsibility for medical expenses incurred up to entry of the original (vacated) order, but denied liability for costs of further treatment by Dr. H., hospital costs and related expenses. During testimony at the hearing Dr. H. was unable to recall ever having been advised respondents disclaimed responsibility for treatment. At the earlier deposition hearing (February 11, 1976) the doctor had been unable to recall respondents had denied responsibility for further treatment. Admittedly no request was made for authorization of treatment rendered subsequent to claimant's referral to Dr. B. Neither was there evidence showing Dr. H. gave any notice the claimant voluntarily had selected Dr. H. to provide further treatment.

There was evidence from a representative of Northwest Anesthesia, Inc. showing when inquiry was made concerning payment for charges respondents denied responsibility. Testimony of a representative of the Bethany Hospital disclosed inquiry always was made by the admitting office when a compensation claimant was admitted. The witness did not know what information was received, but knew the admissions office would have made inquiry of the employer or insurance carrier shown on the admitting record.

The trial court awarded temporary total compensation for period of December 1, 1975 to October 12, 1976, but again incorrectly found in lieu wages had been paid; determined need for further treatment which should be rendered by Dr. B. and no further treatment by Dr. H. would be authorized. Medical and hospital costs incurred during last period of treatment by Dr. H. were disallowed as unauthorized. On en banc appeal this order was modified by awarding compensation for temporary total disability ending October 12, 1976 and sustained in all other respects.

This case must be decided within the framework of 85 O.S.1976 Supp. § 14. Prior to amendment in 1973, decisions under this section held a claimant had an express right to select his own physician in only two circumstances: (1) Where employer failed

to provide medical attention and (2) where an emergency existed. See *Kerr-McGee Corp. v. Croley*, 508 P.2d 1066 (Okla.1973); *Tulsa Linen Service Co. v. Kroth*, 512 P.2d 172 (Okla.1975); *Douglas Aircraft Company v. Titsworth*, 356 P.2d 365 (Okla.1960). In 1973, § 14 was amended to read, in pertinent part:

"Notwithstanding any other provision of this section, the employee may select a physician of his choice to render necessary medical treatment, at the expense of the employer; provided, however, that the attending physician so selected by the employee shall notify the employer and/or the insurance carrier within a reasonable time not to exceed seven (7) days after examination or treatment was first rendered."

In *Mayberry v. Walker's Masonry*, 542 P.2d 510, 514 (Okla.1975), this court held to construe the amended statute to restrict an employee's right to select his own physician to the above two situations would destroy the legislative intent clearly expressed by the above quoted provision. We stated "(t)his language explicitly declares an employee is entitled to select his own physician, without regard to any other provision in the statute."

Claimant first claims under this decision, the portion of the order disallowing medical and hospital costs during the last period of treatment by Dr. H. was error. He asserts because he had an absolute right to select his own physician, any expenses he incurred while under the care of Dr. H. are authorized. We do not agree.

▮ No decision other than *Mayberry* has construed this amended provision. We do not believe § 14 as amended has eliminated the obligation of claimant to make application [1] to the industrial court to change physicians. If we would allow a claimant carte blanche in replacing a physician, it could encourage "doctor shopping" at the expense of the employer and insurance carrier. In the present case claimant made no application to return to Dr. H. Further,

claimant returned to Dr. H. without giving notice to employer and insurance carrier within 7 days as required by § 14. Absent compliance with directives of this section, any incurred medical expenses are unauthorized. Industrial Court was correct in disallowing liability for these expenses. We affirm that portion of the order.

▮ The appealed order also recognized claimant's need for further treatment and ordered that such treatment be given by Dr. B. It stated that treatment by Dr. H. "shall not be authorized now or in the future". We hereby vacate that portion denying claimant the right to be treated by Dr. H. in the future. Respondents approved claimant's initial treatment by Dr. H. There is no evidence that his treatment is incompetent. Under the amended § 14 and *Mayberry* there may be no qualification on claimant's right to be treated by Dr. H. in the future if he so desires.

SUSTAINED IN PART: VACATED IN PART.

HODGES, C. J., and DAVISON, WILLIAMS, BERRY and SIMMS, JJ., concur.

LAVENDER, V. C. J., and IRWIN, J., concur in result.

---

1. Section 14 makes further provision: "The Court shall have authority on application of employee or employer or its insurance carrier to order a change of physicians at the expense of the employer when, in its judgment, such change is desirable or necessary; . . . ."