OSCN Found Document:SHEPARD v. OKLAHOMA DEPARTMENT OF CORRECTIONS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 SHEPARD v. OKLAHOMA DEPARTMENT OF CORRECTIONS
2015 OK 8
Case Number: 113033
Decided: 02/24/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 8, __ P.3d __

 

BARBARA SHEPARD, Petitioner,
v.
THE OKLAHOMA DEPARTMENT OF CORRECTIONS, COMPSOURCE OKLAHOMA and the OKLAHOMA WORKERS' COMPENSATION COURT, Respondents.

PROCEEDING TO REVIEW AN ORDER OF THE WORKERS'
COMPENSATION COURT OF EXISTING CLAIMS

¶0 An employee was awarded continuing medical treatment. An insurance carrier subsequently sought to review employee's need for continuing medical treatment on the basis that 85 O.S.2011 § 326 (G) and statutorily incorporated guidelines for treatment enacted after the award did not provide for the type of treatment the employee was receiving. The Honorable Carla Snipes, Judge of the Workers' Compensation Court of Existing Claims, ordered that the employee would be provided continuing medical maintenance in accordance with the Oklahoma Treatment Guidelines and the Official Disability Guidelines. Employee sought review of that order in this Court, and we retained the proceeding. We hold that 85 O.S.2011 § 326(G) and the statutorily incorporated Guidelines were unconstitutionally applied retroactively to employee's previous award for medical treatment that predated § 326.

ORDER OF THE WORKERS' COMPENSATION COURT OF EXISTING CLAIMS
VACATED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS

Richard A. Bell, David Custar, The Bell Law Firm, Norman, Oklahoma, for Petitioner.
W. Jeffrey Dasovich, Oklahoma City, Oklahoma, for Respondents.

EDMONDSON, J.

¶1 An insurance carrier sought review of a previous award of the Workers' Compensation Court that provided an injured worker with continuing necessary medical treatment in the form of prescriptions for pain management. The physicians for both sides to this dispute agreed that guidelines for treatment authorized by former 85 O.S.2011 § 326(G) did not provide for prescriptions as treatment for this worker's chronic pain. We conclude that the worker's statutory right under a former statute to necessary medical treatment that became a court award prior to the effective date of both 85 O.S.2011 § 326(G) and its incorporated guidelines, could not be extinguished by a retroactive application of the statute/guidelines to the worker without violating Art. V § 54, Okla. Const., which provides that "The repeal of a statute shall not . . . affect any accrued right . . . by virtue of such repealed statute.[1]

I.

¶2 In November 2005, Shepard was working for the Oklahoma Department of Corrections when she was injured. The Workers' Compensation Court found that Shepard sustained an injury to her neck, lumbar back, left shoulder, right shoulder, and left arm. The court determined that she had sustained a permanent partial disability. The court ordered the respondent and/or insurance carrier "to provide the claimant with reasonable and necessary continuing medical maintenance limited to prescription medications and four (4) visits per year to monitor same with Dr. M. This provision shall be reviewed by the Court upon application of either party for good cause shown." O.R. at p. 62. There was no limit imposed on the doctor's exercise of a medical judgment as to which prescriptions were needed by Shepard, except those that were medically reasonable and necessary. The court also directed payment of reasonable and necessary medical expenses incurred by Shepard as a result of her injury.

¶3 In 2010, Shepard moved to reopen her claim based upon a change of condition for the worse. In 2011, the Workers' Compensation Court reopened the claim and determined that Shepard had a change of condition for the worse and allowed additional compensation for the worsening of her left shoulder. The court also determined that she had no change of condition to her lumbar spine. The order of the Workers' Compensation Court en banc stated that respondent/insurance carrier "shall pay all reasonable and necessary medical expenses incurred by claimant as a result of said injury through the date of this order." The previous award of continuing medical maintenance was not disturbed by the order that reopened her claim.

¶4 The order on reopening was appealed to the Court en banc which affirmed in part and modified in part the previous order. In 2011, the Court en banc modified a provision relating to temporary total disability, and two provisions of attorney's fees. The award of reasonable and necessary medical expenses was not modified. The previous award of continuing medical maintenance was not disturbed.

¶5 In 2012, Respondents sought a hearing to "discuss prescriptions." They objected to Dr. M.'s medical report dated August 20, 2012. The court ordered Shepard to submit to a medical examination by Dr. Y., and directed this doctor to determine whether Shepard needed pain management and the nature and extent of necessary continuing medical maintenance. The order also directed Dr. Y. to determine if Shepard's current continuing medical maintenance by Dr. M. was within the Oklahoma Treatment Guidelines. The court also directed Dr. Y. to determine whether Shepard's continuing medical maintenance was within the Oklahoma Treatment Guidelines; and if not, was her continuing medical maintenance in her best interest?

¶6 Respondents then sought an order that would have the effect of terminating Shepard's medical prescriptions. In June 2014, the Workers' Compensation Court of Existing Claims ordered that Dr. M. "shall provide continuing medical maintenance to the claimant in accordance with the Oklahoma Treatment Guidelines (OTG) and the Official Disability Guidelines (ODG)." In July 2014, Shepard sought review of this decision by filing a petition in this Court. We retained the review proceeding on the Court's own motion.[2]

¶7 Shepard's first argument is that the Workers' Compensation Court of Existing Claims committed legal error by applying statutes and publications to control her medical treatment when those statutes and publications did not exist at the time of her injury. Her second argument is that if the Official Disability Guidelines and the Oklahoma Treatment Guidelines are applied to restrict the choices of prescriptions her physician may prescribe for her, then the Guidelines' application are the unauthorized practice of medicine.[3]

¶8 Respondents filed a response brief. They argued that (1) the Official Disability Guidelines and the Oklahoma Treatment Guidelines "are fully in effect and are the last will of the People; and (2) medical treatment is a benefit and 85 O.S. § 326.G "merely directs how the benefit should be provided." Their brief cites Rivas v. Parkland Manor, 2000 OK 68, 12 P.3d 452, in support of their arguments.[4] Their brief concludes with the assertion that the Court must determine "the effective date of Title 85 § 326.G."

¶9 The controversy before us is an adjudication of statutory intent concerning the trial tribunal's retroactive application of a statute. An issue involving the existence of a legislative intent to make a statute retroactive is a question of law examined de novo and independently of the trial tribunal's ruling.[5]

II.

¶10 Shepard argues that the respondents have made an impermissible retroactive application of a new workers' compensation law. Respondents argue that application of the new law to medical benefits currently being provided is not a retroactive application. They also argue that even if the application is a retroactive application of a statute, then such application is permissible.

¶11 We must first determine whether the parties are correct that a change in the substance of the statute has occurred resulting in new law.[6] The dispute is presented by the parties as a conflict between 85 O.S.Supp.2005 § 14 (A)(1), in effect on Shepard's date of injury on November 9, 2005,[7] and 85 O.S.2011 § 326 (G), allegedly in effect for the review of Shepard's continuing medical award.[8] Section 14 (A)(1) states as follows.

A. 1. The employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may be necessary after the injury. The treating physician shall supply the injured employee and the employer with a full examining report of injuries found at the time of examination and proposed treatment, this report to be supplied within seven (7) days after the examination; also, at the conclusion of the treatment the treating physician shall supply a full report of the treatment to the employer of the injured employee.

The newer statute, codified at 85 O.S.2011 § 326(G), states as follows.

G. Effective March 1, 2012, the scope and duration of medical treatment shall be provided in accordance with the current edition of the "Official Disability Guidelines", as published by the Work Loss Data Institute. For medical treatment not addressed by the Official Disability Guidelines or addressed but not recommended in the ODG section in regard to injuries to the cervical, thoracic, or lumbar spine, the Physician Advisory Committee shall adopt the Oklahoma Treatment Guidelines as provided in Section 73 of this act. Medical treatment provided by or at the direction of the treating physician in accordance with the current edition of the Official Disability Guidelines or Oklahoma Treatment Guidelines is presumed to be reasonable and necessary medical care. The employer or insurance carrier shall not be responsible for charges for medical treatment not provided in accordance with the current edition of the Official Disability Guidelines or Oklahoma Treatment Guidelines unless the medical treatment was provided in a medical emergency, the medical treatment was preauthorized by the employer or insurance carrier, or the medical treatment is approved by the Court upon a finding based on clear and convincing evidence provided by a qualified independent medical examiner that medical treatment provided according to either the ODG or OTG is not in the best interest of the employee.

85 O.S.2011 § 326(G).

Shepard states that pursuant to § 14 she is entitled to medical treatment "as may be necessary." However, pursuant to § 326 medical treatment pursuant to the Official Disability Guidelines (ODG) or the Oklahoma Treatment Guidelines (OTG) has a mandatory evidentiary presumption that only treatment pursuant to the ODG or OTG qualifies as reasonable and necessary care except for three instances: (1) medical treatment provided in a medical emergency, (2) medical treatment preauthorized by the employer or insurance carrier, or (3) medical treatment that was approved by the Court upon a finding based on clear and convincing evidence provided by a qualified independent medical examiner that medical treatment provided according to either the ODG or OTG is not in the best interest of the employee. Shepard argues that the express language of § 326(G) prevents her treating physician from providing testimony concerning her needed medical care in that the statute limits the nature of the evidentiary proof to the report of an independent medical examiner when treatment is sought that is not provided by the ODG and OTG.

¶12 Under various versions of former § 14, the questions (1) when medical treatment should cease and (2) what specific medical treatment was reasonably necessary were questions of fact to be resolved by the Workers' Compensation Court based upon sufficient evidence;[9] and an award for future medical care was procedurally proper only when considered as part of the permanent disability finding or on a subsequent motion to reopen showing a change of condition.[10] Section 326 (G) is a clear attempt to change the burden of proof used by the trial tribunal when adjudicating the fact whether sufficient evidence of a need for continuing medical care has been shown by the medical reports of the qualified independent medical examiner, as opposed to the medical reports of the other medical experts.[11] A comparison of §14 and §326 clearly shows a change in the substance of the law.

¶13 We must next determine whether the Legislature has indicated a retroactive application of § 326(G) by its application to someone who had been awarded continuing medical care prior to March 1, 2012. We have explained statutes are generally presumed to operate prospectively only unless there is either a plain legislative intent to the contrary[12] or the nature of the content of the statute invokes a presumption of retroactivity such as an instance of a purely remedial statute.[13] Shepard argues that § 326 states that it applies after March 1, 2012, and makes no distinction based upon either the type of treatment or when the worker's injury occurred.

¶14 When the Legislature has demonstrated an intent for retroactive application for Workers' Compensation statutes it has used language such as "regardless of the date of injury,"[14] and we have also examined whether the language in a statute "necessarily implied" retroactivity.[15] In Hillcrest Medical Center v. Powell, we recently noted that the 2011 version of 85 O.S. § 329(B) allowed the appointment of the independent medical examiner, regardless of the date of injury, to assist in determining any issue before the Court, and that this language showed a legislative intent for retroactive application of that statute to claims based upon injuries occurring prior to the effective date of that statute.[16]

¶15 Generally, statutes on the same subject matter are viewed in pari materia and construed together as a harmonious whole giving effect to each provision,[17] and we have applied this concept when construing workers' compensation statutes where "we look to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent."[18] We also note that Sections 329 and 326 were enacted at the same time by the same Legislature and this fact adds support to construing these statutes in pari materia for an understanding of the Legislature's intent for § 326(G).[19]

¶16 These principles of in pari materia statutory construction are nothing new and they have been used by this Court for a period exceeding 100 years; and their use is based, in part, upon an even earlier common-law recognition.[20] Members of the Legislature are presumed to be, and they generally are in fact, familiar with settled rules of statutory construction; and they should expect the courts to follow them when construing and enforcing statutes in order that there may be stability and certainty in their construction and enforcement.[21] We have noted that § 329 has language of retroactivity for the role of the independent medical examiner, and we further note that the language of § 326(G) refers to "the scope and duration" of the medical treatment provided to an injured worker based and the reports of an independent medical examiner. We conclude that the Legislature intended for § 326(G) to apply to continuing medical care which had been awarded prior to the effective date of § 326(G).

III.

¶17 Respondents argue that the last expression of the People, the most recently enacted statute (§ 326), should govern the rights of the parties in this controversy. It is certainly correct that this Court has followed a rule of statutory construction that the most recent statute will be given effect over a conflicting prior statute when the conflict is between two statutes,[22] and we have applied this rule of statutory construction when reviewing workers' compensation statutes.[23] However, it is also correct that the People have created sources of our state law that are constitutionally arranged in a hierarchy of authority with the lowest rank being the common law, statutes occupying the middle tier, and the highest tier with the most authority being occupied by our State Constitution.[24] In summary, Respondents' argument that the newest statute (§ 326) has a higher legal authority than an older conflicting statute (§ 14) has merit for resolving the controversy unless Shepard's claim is correct that § 326(G) has been applied in an unconstitutional manner, i.e., in a manner that is contrary to the People's Will as expressed in the Oklahoma Constitution.

¶18 Generally, a parties' agreement concerning future conduct does not prevent the Legislature, or the People acting legislatively, from exercising a police power and altering the parties' agreement.[25] There is little doubt that a state legislature may alter the private contractual rights of employers and employees when it properly exercises its police power in creating a particular workers' compensation law,[26] and in Oklahoma we have followed this concept when noting that many workers' compensation provisions were created using a legislative police power.[27] A judicial examination of the Legislature's power to act in a given circumstance occurs in the context of a legally cognizable controversy where the claim is made that the Legislature is constitutionally prohibited from creating a particular statute.[28]

¶19 It is certainly correct that the Legislature's use of the legislative police power may have the result of altering vested contractual rights.[29] However, as we have explained in several opinions, the Oklahoma Constitution has certain provisions concerning accrued or vested rights and these provisions require application of law at a fixed point in time that is prior to any legislative amendments which seek to alter those rights.[30] This constitutional prohibition is based upon a vested right, and the party challenging a statute must show that a vested right is being infringed.[31] In summary and paraphrasing the U. S. Supreme Court, it does not follow that what the Legislature can legislate prospectively it can legislate retrospectively;[32] i.e., the Legislature is prohibited from creating certain types of retroactive statutes. Our focus must turn to the alleged right at issue to determine if it is a vested right not subject to retroactive legislation.

¶20 In Burns v. Southwestern Preferred Prop., Inc., we recognized that an injured worker had a statutory right pursuant to the 1976 version of § 14 to obtain necessary medical treatment.[33] In 1984, we stated the following.

The primary goal of the compensation law is to rehabilitate injured workers in order that they may be promptly restored to full productive capacity or, if that be impossible, to its highest attainable level. Medical treatment is the key to seasonable and effective recovery and rehabilitation. . . Absent some explicit legislative language, we are not free to abridge the trial tribunal's power to achieve the most important objective of the act--that of restoring, as far as possible, the injured worker's body to its pre-accident condition.

Iwunoh v. Maremont Corp., 1984 OK 8, 692 P.2d 548, 550.

This language is consistent with Orrick Stone Co. v. Jeffries, supra, where we stated that upon the basis of (1) our understanding of § 14 and (2) a long-standing interpretation of a 1929 opinion of the Court, a claimant properly shown to be entitled thereto may be awarded continuing medical treatment and care for as long as it may be needed even after temporary total disability payments have been made, and it may be awarded contemporaneously with and as a part of an order awarding permanent total disability.[34]

¶21 We agree with Shepard that an award for continuing medical treatment and care is a statutory right recognized under former version of 85 O.S. § 14. However, we must examine the nature of this right, is it procedural or substantive?

¶22 Respondents argue that a § 14 award of continuing necessary medical care did not change in substance with the creation of § 326(G) because this newer statute states that reasonable and necessary medical care will be awarded. Respondents argue that the only difference in the new statute is a change of procedure to be followed by a claimant showing that the medical care provided is authorized by the Official Disability Guidelines or the Oklahoma Treatment Guidelines. Shepard argues that there is a substantive difference between the medical treatment authorized by § 326 and her care authorized by § 14.

¶23 The record on appeal contains a medical report as well as two depositions of Shepard's treating physician, Dr. M., one dated November 2012, and one dated March 2014, where he testified concerning the application of the Official Disability Guidelines, or ODG, to Shepard and others in similar circumstances. He stated that the nature of Shepard's injuries and the treatment required did not fall within the Oklahoma Treatment Guidelines, but her injuries did "fall within the ODGs, because the ODGs do cover these - - this type of problem, this type of injury." However, Dr. M. stated that from a treating physician's point of view there were both good and bad aspects to the Official Disability Guidelines. He disagreed with the Guidelines when treating pain management. One point of disagreement was that the ODG did not provide any medical treatment in the form of prescriptions for chronic pain. He testified that a claimant seeking medical treatment for chronic pain would receive "nothing" under the ODG, no anti-inflammatories, no muscle relaxers, no painkillers, and no sleep assistance prescriptions. He testified that the ODG allow for "intermittent use of medication, but not on a routine prescription basis." He testified that when a patient's pain "would be really bad" and a patient needed to get it under control, the ODG would not "allow any pain medication outside of anti-inflammatory medication." He explained that when a person had multi-level disc pain, and because a multi-level surgical fusion was not medically recommended, the ODG "would put them out on the street" without surgery or any long-term medication management. This testimony was not contradicted by the Respondents.

¶24 Dr. M. testified how the ODG would, in some circumstance, say "not recommended" for a particular medical treatment although there was an underlying lack of a proper scientific study for that particular recommendation. He opined that scientific studies showing the extent to which medical treatment either failed or achieved its desired medical goals should be a necessary predicate for making medical treatment recommendations that doctors are required to follow. He stated that some of the Guidelines "were written based on the fact there weren't any articles of level-one and level-two evidence to support a certain treatment regime, like long-term, anti-inflammatory medication usage." He also stated that while many of the Guidelines are evidence-based, "the material that they use are all short-term studies," and they do not include the proper studies for long-term management of pain. He stated that the neurosurgeon and neurosurgeon/orthopedic "can follow the ODGs easier than a chronic pain manager."

¶25 Dr. M. testified concerning Shepard's surgery to both of her shoulders, injections by a second doctor, and physical therapy to her neck and back provided by a third doctor; and that this third doctor also recommended "ongoing medical management." Dr. M. stated he had prescribed pain medication according to the American Academy of Pain Management and the Oklahoma Guidelines for the Treatment of Chronic Pain Disorders. Dr. M. testified that at one of his recent professional meetings the subject was the use of a non-narcotic anti-anxiety drug to treat a person with chronic pain as one method to reduce a patient's reliance or need for a narcotic. He testified he had prescribed a particular non-narcotic for Shepard, but the Official Disability Guidelines would not allow this use of an anti-anxiety drug. He stated: "what I'm trying to do is allow her to function at the best level she can function as a result of her current physical condition." He stated Shepard's degree of mobility was linked to her prescriptions, and he had changed some of her prescriptions during the course of her treatment.

¶26 Dr. M. stated Shepard was monitored with scheduled blood tests to check liver and kidney functions as well as other lab work. He stated Shepard was compliant with all prescribed medical treatment. He testified Shepard was randomly tested for signs of improper drug use and she had never failed a test. He stated Shepard had always called his office with reports on her visits with other doctors and treatments those doctors recommended. He testified Shepard's use of one prescription was "way below the guidelines for the three pain societies that I'm aware of." He stated Shepard was not overusing any of her prescriptions, and all of her prescriptions were generic except one.

¶27 Respondents provided a medical report from Dr. Y. He provided a history of Shepard's arm fracture, different recommendations for surgery by different doctors at various times for different conditions, two different surgeries on her left shoulder, right shoulder surgery, clavicle excision, rotator cuff repair, joint injections, back injury where surgery was not recommended, and Shepard's complaints of back and shoulder pain, numbness in arms, popping and grinding in the right shoulder on raising the right arm, left shoulder issues involving pain and weakness, decreased range of motion in shoulders and arms, pain in shoulders, arms and back, muscle spasms, and difficulty in lifting objects and sitting for an extended period of time.

¶28 Dr. Y.'s opinion: "In my opinion, per the Official Disability Guidelines, this person is not in need of any continuing medical maintenance because continuing medical maintenance is not in her best interest." He then listed Shepard's medications and stated that they were either not allowed by the Guidelines or that they were not covered by the previous court award. He stated that two medications are allowed by the Guidelines for any award for continuing medical maintenance and they are Naproxen and Talacin. However, because of his conclusions concerning the nature of Shepard's medical injuries and the duration and nature of her complaints of pain, he concluded that she should not be awarded either of these prescriptions. The report of Dr. Y.'s physical examination does not note any change in Shepard's medical condition that could serve as a basis for changing Shepard's prescriptions. For Dr. Y., no drugs were available under the Guidelines' drug formulary for Shepard's medical condition.

¶29 The trial tribunal issued an "Order Authorizing Medical Treatment" and it provides that Dr. M. "shall provide continuing medical maintenance to the claimant in accordance with the Oklahoma Treatment Guidelines (OTG) and Official Disability Guidelines (ODG)." The testimony before the trial tribunal was that application of the OTG and ODG meant that Shepard would receive no prescriptions. The lawyers, doctors, and trial judge were aware of this. Respondents state in this Court that they sought an order from the trial judge that would require "all future medical maintenance treatment conform to the ODG/OTG," and the judge granted that request. In one sense, the purpose of the review sought by Respondents was not to determine whether Shepard needed to continue her prescriptions, but to obtain an order stating that the Guidelines applied to Shepard and no prescriptions would thus be authorized.

¶30 The evidence is not controverted that a physician rendering medical treatment pursuant to former versions of 85 O.S. §14 had a much larger formulary of prescription drugs to use when providing necessary medical care after injury to someone in Shepard's circumstances. Indeed, both Dr. M. and Dr. Y. indicate that no drugs are approved under the Guidelines for Shepard's specific pain resulting from her specific injuries. It is well-known that with advancements in the art of medical science many prescription drugs are both approved and disapproved for the public by the United States Food and Drug Association during different times, and no person has a reasonable expectation that any particular drug will always be available to use. However, in the present case, the award for continuing medical maintenance specifically included continuing treatment with prescriptions for pain management.

¶31 The continuing nature of Shepard's award and her right thereby to receive continuing medical care becomes illusory if the Legislature has the power to approve a formulary which denies all prescription drugs to a person in Shepard's circumstances after she has been awarded that form of medical care. Application of § 326(G) is not, as suggested by Respondents, a mere procedural step for Shepard to get approval of her previously awarded medical care for pain management. Application of § 326(G) destroys her previous court award by removing Respondents' liability for providing medically necessary prescriptions. We conclude that the Shepard's award of medical treatment was a substantive right that was constitutionally protected from diminution resulting from retroactive legislation, as we now further explain.

¶32 In 1988, the Court relied on opinions spanning more than fifty years and explained that the right of an employee to compensation for the work-related injury arises from the contractual relationship existing between the employee and the employer on the date of the injury, and the statutes then in force form a part of that contract and determine the substantive rights and obligations of the parties.[35] More recently we have followed this principle and explained that the Oklahoma Constitution shields substantive rights created by workers' compensation statutes from diminution by retroactive legislation.[36]

¶33 In one recent opinion we cited opinions from 2003 and 2006 for the proposition that we examine whether the challenged statute acts to increase or diminish the amount of recoverable compensation or alter the elements of the claim or defense by imposition of new conditions; and if it does, prospective application of the law is constitutionally required regardless of retroactive statutory language.[37] There is the well-known exception to the general rule against applying workers' compensation statutes retroactively. Statutes relating solely to remedies and affecting modes of procedure do operate retrospectively and apply to pending proceedings. But this exception cannot be invoked if the amendment represents more than a mere procedural reform and intrudes upon substantive rights.[38] Statutes which affect parties' substantive rights and liabilities are shielded from amendatory change by the terms of the Okla. Const. Art. 5, § 54.[39]

¶34 The application of § 326(G) and the ODG by the trial tribunal diminished the previously awarded medical treatment in the form of authorized pain management under former § 14. In these circumstances Shepard's right to pain management as a previously awarded medically necessary treatment was statutorily taken from her by § 326(G) and its incorporated Guidelines which failed to provide for continuing medical treatment in the form of prescriptions for her specific work-related injuries. We hold that § 326(G) and its incorporated Guidelines for authorized prescriptions were unconstitutionally applied to Shepard by the trial tribunal.[40]

IV.

¶35 During Shepard's hearing her counsel argued that the ODG could not be applied retroactively, and he also made specific probative-value objection to Respondents introducing Dr. Y.'s report. His objection was based upon Dr. Y. using the Guidelines, and the studies that they were based on as criticized by Dr. M. We hold herein that § 326(G) and its incorporated guidelines should not have been applied to Shepard.

¶36 In Broken Arrow Nursing Home v. Huff, 2001 OK 62, 28 P.3d 568, we stated that "appellate courts, when condemning flawed evidence, will not direct that the claim be disposed of on the admitted adversary's proof but instead will remand the claim for a new hearing that will afford another opportunity to the party whose evidence was pronounced to be flawed." Id. We then stated that "The claimant is clearly entitled to another hearing (before the trial tribunal) of her claim and to an opportunity to replace the flawed report with one that is admissible and has probative value." Id.[41] The hearing before the trial tribunal was sought by Respondents for review of Shepard's continuing medical treatment. Respondents must be given an opportunity to file a report that complies with both the law which controls Shepard's medical treatment and the medical facts of her condition relating to continued medical care.

V.

¶37 We hold that 85 O.S.2011 § 326(G) and the statutorily incorporated Guidelines were unconstitutionally applied retroactively to Shepard's previous award for medical treatment that predated § 326. We vacate the order of the trial tribunal of the Workers' Compensation Court of Existing Claims, and remand the proceeding to that court for further proceedings consistent with this opinion.

¶38 REIF, C. J., COMBS, V. C. J., KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, GURICH, JJ., concur.

¶39 COLBERT, J., not participating.

FOOTNOTES

[1] Okla. Const. Art. 5 § 54: "The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."

[2] See Okla. Sup. Ct. R. 1.24(a) ("Every appeal is subject to assignment to the Court of Civil Appeals unless retained by the Supreme Court either pursuant to a motion to retain or on the Court's own motion."); Okla. Sup. Ct. R. 1.77 (c) (in Part IV(a) of the Rules and stating that "Unless specifically provided otherwise in any subsequent Part of these Rules the following provisions apply: . . . (c) Rule 1.24 . . . shall apply to all appeals."); Okla. Sup. Ct. R. 1.100(a) (" . . . The Rules in Part IV (a) of these Rules shall apply unless a Rule in Part IV(c) of these Rules provides otherwise.").

[3] Because we adjudicate the matter on Shepard's first argument we need not address her second.

[4] In Rivas v. Parkland Manor, 2000 OK 68, ¶ 15, 12 P.3d 452, 457, we stated that it is not the job of this Court to interfere with the wisdom or policy of legislation.

[5] Hillcrest Med. Center v. Powell, 2013 OK 1, ¶ 6, 295 P.3d 13, 15 (Issue whether the law in effect at the time of the injury applies or whether a subsequently-enacted law applies presents a question of law subject to de novo review); Amos v. Spiro Public Schools, 2004 OK 4, ¶ 5, 85 P.3d 813, 815 (A compensation tribunal's legal rulings stand on review subject to an appellate court's plenary, independent and nondeferential reexamination.).

[6] World Pub. Co. v. White, 2001 OK 48, ¶ 17, 32 P.3d 835, 844 ("If the Legislature amends a statutory provision, the portions of the original statute which are repeated are considered to have been the law from the time they were originally enacted.").

[7] 85 O.S. § 14 was amended by Laws 2005, 1st Ex.Sess., c. 1, § 15, and pursuant to § 35 thereof was made effective on July 1, 2005.

[8] Although 85 O.S.2011 § 326 was repealed by Laws 2013, c. 208, § 171, with an effective date of February 1, 2014, that was prior to both (1) the March 28, 2014, filing of Respondents' Form 13 seeking a review of the continuing medical award and (2) the trial tribunal's decision on June 25, 2014, the parties and judge treated Shepard's continuing medical as governed by § 326, apparently because 85A O.S.Supp.2013 § 3 (C) of Oklahoma's Administrative Workers' Compensation Act (85A O.S.Supp.2013 §§ 1-106, 150-168), was in effect commencing on February 1, 2014, and § 3 (C) of that Act states that "The Workers' Compensation Code in effect before the date of this act shall govern all rights in respect to claims for injuries and death based upon accidents before the effective date of this act."

[9] Iwunoh v. Maremont Corp., 1984 OK 8, 692 P.2d 548, 549 ("The question of whether medical treatment is necessary for an injured worker is a question of fact for determination by the trial tribunal."); Orrick Stone Co. v. Jeffries, 1971 OK 116, 488 P.2d 1243, 1246 ("The question of when medical treatment should cease or whether an operation is reasonably necessary is one of fact to be resolved by the State Industrial Court. That Court, if supported by sufficient evidence, may direct treatment in the future.").

[10] Pitchford v. Jim Powell Dozer, Inc., 2000 OK 12, ¶ 9, 996 P.2d 935, 937 (Claimant did not request reservation of continuing medical maintenance or treatment, the order determining disability did not address or reserve the issue of continuing medical maintenance, and in the absence of a reservation or award with a disability finding a claimant must show a change of condition for the worse before continuing medical maintenance benefits may be awarded.).

[11] In Oklahoma State Chiropractic Independent Physicians Association v. Fallin, 2011 OK 102, ¶ 10, 290 P.3d 1, 4-5, we concluded that statutory language which would have changed the burden of proof at the trial court level for reports of independent medical examiners, and prevented proof from other medical professionals was unconstitutional. We stated that the statutes infringed upon the Workers' Compensation Court's discretion in determining claims and invaded the judiciary's exclusive prerogative of fact-finding. Id.

[12] Walls v. American Tobacco Co., 2000 OK 66, ¶ 21, 11 P.3d 626, 631 (Statutes are generally presumed to be prospective in application. This presumption is rebutted when there is legislative intent that is expressly declared or necessarily implied from the language used.). See also Franklin v. Sovereign Camp, W.O.W., 1930 OK 195, 291 P. 513, ("Laws are generally construed as applicable to future conditions, and are not to be allowed a retroactive effect unless such intention upon the part of the Legislature is so clearly expressed that no other construction can be fairly given.")

[13] Scruggs v. Edwards, 2007 OK 6, ¶ 8, 154 P.3d 1257, 1261 (amendments relating solely to remedies and affecting only modes of procedure are generally held to operate retroactively and apply to pending proceedings).

[14] Joe Brown Co., Inc. v. Melton, 2013 OK 66, ¶ 2, & n.1, 307 P.2d 342, 344 (Court quoted former 85 O.S.2011 § 340(D) providing in part: "After the effective date of this act, regardless of the date of injury, the Supreme Court may modify, reverse, remand for rehearing, or set aside the order . . . ." and noting the retroactivity of the change in the standard or review).

[15] Starkey v. Oklahoma Department of Corrections, 2013 OK 43, ¶ 24, 305 P.3d 1004, 1014.

[16] Hillcrest Med. Center v. Powell, 2013 OK 1, ¶ 8, 295 P.3d 13, 16.

[17] Tyler v. Shelter Mut. Ins. Co., 2008 OK 9, ¶ 1, 184 P.3d 496. See also Taylor v. State Farm Fire and Cas. Co., 1999 OK 44, ¶ 19, 981 P.2d 1253, 1261 (All legislative enactments in pari materia are to be interpreted together as forming a single body of law that will fit into a coherent symmetry of legislation.).

[18] McBride v. Grand Island Exp., Inc., 2010 OK 93, ¶ 10, 246 P.3d 718, 721, quoting World Publishing Co. v. Miller, 2001 OK 49, ¶ 7, 32 P.3d 829, 832. See also Prettyman v. Halliburton Co., 1992 OK 63, ¶ 7, 841 P.2d 573, 580 ("... amendments are to be construed together with the original act to which they relate as constituting one law and also together with other statutes on the same subject as part of a coherent system of legislation.").

[19] Hamilton By and Through Hamilton v. Vaden, 1986 OK 36, 721 P.2d 412, 417. Cf. Mustain v. Grand River Dam Authority, 2003 OK 43, n.44, 68 P.3d 991, 999 ("The Latin phrase 'in pari materia' means 'upon the same matter.'").

[20] In Re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 37, 326 P.3d 496, 511 (principle stated); De Graffenreid v. Iowa Land & Trust Co., 1908 OK 49, 95 P. 624, 639 (same); Theodore Sedgwick, A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law, 209-210 (2d ed. 1874) (with notes by John Pomeroy) (Rothman, ed. 1980), quoting Lord Mansfield in Earl of Ailesbury v. Pattison, 1 Dougl. Rep. 28, 30, 99 Eng. Rep. 22 (1778) ("All Acts in pari materia," said Lord Mansfield, "are to be taken together, as if they were one law."); Livingston's Lessee v. Moore, 32 U.S. (7 Pet.) 469, 510, 8 L.Ed. 751 (1833) (stating principle and citing Earl of Ailesbury).

[21] Wimberly v. Deacon, 1943 OK 432, 144 P.2d 447, 450.

[22] City of Oklahoma City v. International Assoc. of Fire Fighters, Local 157, 2011 OK 29, ¶ 17, 254 P.3d 678, 683; State ex rel. Murphy v. Boudreau, 1982 OK 117, 653 P.2d 531, 533; Brown v. Marker, 1965 OK 172, 410 P.2d 61, 66.

[23] Hogg v. Oklahoma County Juvenile Bureau, 2012 OK 107, ¶ 9, 292 P.3d 29.

[24] Wright v. Grove Sun Newspaper Co., Inc., 1994 OK 37, 873 P.2d 983, 987 (the common law is in force unless statute provides the contrary); Board of Regents of University of Oklahoma v. Baker, 1981 OK 160, 638 P.2d 464, 466 ("While the law-making power of the Legislature is supreme within its proper sphere, that power may be restricted and limited by constitutional provisions.").

[25] Edmondson v. Pearce, 2004 OK 23, ¶¶ 28-29, 91 P.3d 605, 621-622, cert. denied sub nom. Tally v. Edmondson, 543 U.S. 987, 125 S.Ct. 495, 160 L.Ed.2d 371 (2004) (Court recognized principle in the context of applying the well-known three-part test for whether a state law had violated the Contract Clause).

[26] New York Cent. R. Co. v. White, 243 US 188, 206, 61 L Ed 667, 37 S Ct 247 (1917) (Although New York's Workmen's Compensation Law was applied to employers and employees operating under pre-existing contracts of employment that made no provision for work-related injuries, the Law did not deprive employer of its property without due process of law, and deny to it the equal protection of the laws, in contravention of the 14th Amendment. This is so because the subject matter of the Law was a proper exercise of police power in that the subject matter in respect of which freedom of contract was restricted was the matter of compensation for human life or limb lost or disability incurred in the course of hazardous employment, and the public had a direct interest in this as affecting the common welfare.)

[27] Cities Service Gas Co. v. Witt, 1972 OK 100, 500 P.2d 288, 290 ("The [Oklahoma] Workmen's Compensation Law is a creature of the Legislature in the exercise of its police power."), citing National Bank of Tulsa Building v. Goldsmith, 1951 OK 5, 226 P.2d 916, 920 ("The [Workmen's Compensation] legislation measurably limits the freedom of employer and employee to agree respecting the terms of their employment, but it inures to the general welfare of the people and has been sustained as a reasonable exercise of the police power of the State."). See also Indian Territory Illuminating Oil v. Davis, 1932 OK 210, 9 P.2d 40, 42 (discussed constitutional challenges to Workmen's Compensation Laws in other states and the constitutionality of Oklahoma's version "under the doctrine of general police power.").

[28] Movants to Quash Multicounty Grand Jury Subpoena v. Dixon, 2008 OK 36, ¶ 22, 184 P.3d 546, 553 ("We do not examine the Constitution to decide whether the Legislature is permitted to act. . . Rather, we examine the Constitution to decide whether the Legislature is prohibited from acting.").

[29] See, e.g., Union Oil Co. of California v. Brown, 1981 OK 112, n. 2, 641 P.2d 1106, 1110 ("It is instructive to note in this connection that the oil and gas conservation statutes are an exercise of the police power of the State and through the exercise of that power, vested rights may be affected.").

[30] For example, if one person has a proper lien against the property of another, then the Legislature may not subsequently create a statute that dissolves that person's lien. First National Bank of Pauls Valley v. Crudup, 1982 OK 132, 656 P.2d 914, 916-917 ("A filed lien statement doubtless constitutes an 'accrued right' that is postured in the status of 'proceedings begun'. The interest, once created, may not be disturbed by subsequently-enacted legislation.").

[31] CDR Systems Corp. v. Oklahoma Tax Commission, 2014 OK 31, ¶ 10, 339 P.3d 848, 852 ("In considering a statute's constitutionality, courts are guided by well-established principles and a heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality.").

[32] Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16-17, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) ("It does not follow, however, that what Congress can legislate prospectively it can legislate retrospectively. The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former."). While the constitutional challenge we address is not based upon the Due Process Clause, the observation in Usery is nevertheless correct that retroactive statutes may be subject to constitutional limits on legislative power that are not applied to prospective statutes.

[33] Burns v. Southwestern Preferred Prop., Inc., 1978 OK 95, 580 P.2d 986 (Court applied 85 O.S.Supp.1976 § 14 which provided that an employer "shall promptly provide for an injured employee such medical . . . treatment . . . as may be necessary after the injury . . . [and] employee may select a physician of his choice to render necessary medical treatment [provided that timely notice to the employer and court was made] . . . [and] [w]hoever renders medical . . . treatment . . . shall submit the reasonableness of the charges to the State Industrial Court for its approval.").

[34] Orrick Stone Co. v. Jeffries, 1971 OK 116, 488 P.2d 1243, 1249, citing McMurtry Bros. v. Angelo, 1929 OK 480, 281 P. 964.

[35] Knott v. Halliburton Services, 1988 OK 29, 752 P.2d 812, 813-814. The Court cited Apple v. State Insurance Fund,1975 OK 88, 540 P.2d 545, 547; Caswell v. Bird, 1932 OK 795, 16 P.2d 859; Weber v. Armco, Inc., 1983 OK 53, 663 P.2d 1221; Leeway Motor Freight, Inc. v. Wilson, 1980 OK 48, 609 P.2d 777, 779; Magnolia Petroleum Co. v. Watkins, 1936 OK 372, 57 P.2d 622, 623. The Court also cited in support of its conclusions, Ashlock v. Liberty Glass Co., 1987 OK CIV APP 19, 739 P.2d 1025, 1026 (released for publication by order of the Court of Civil Appeals). Cf. Beets v. Metropolitan Life Ins. Co., 1999 OK 15, n. 2, 995 P.2d 1071 (citing opinions for the principle that "A workers' compensation claim is ruled by the law in existence at the time of the injury and not by the laws enacted thereafter.").

[36] Controls Components, Ltd. v. Weaver, 2013 OK 8, ¶ 3, 301 P.3d 405, 406, quoting Williams Companies, Inc. v. Dunkelgod, 2012 OK 96, ¶ 18, 295 P.3d 1107, 1113, in turn citing Okla. Const. Art. 5 §§ 52, 54; and Dunlap v. The Multiple Injury Trust Fund, 2011 OK 14, 249 P.3d 0951; and Nomac Drilling LLC v. Mowdy, 2012 OK 45, 277 P.3d 1282. See also Prince v. Brake Rebuilders & Friction Products, Inc., 2012 OK 104, ¶ 7, 298 P.3d 529, 531 (85 O.S.2011 § 340(D) is substantive and cannot be applied to injuries which occurred before August 26, 2011.); Prince v. Brake Rebuilders & Friction Products, Inc., 2012 OK 104, ¶ 17, 298 P.3d 529, 532, citing Okla. Const., Art. 5, § 54 ("Additionally, accrued rights and proceedings begun pursuant to statute are protected against the repeal of those statutes."); American Airlines v. Crabb, 2009 OK 68, ¶ 10, 221 P.3d 1289, 1291-1292 (No subsequent amendment can operate retrospectively to affect in any way the substantive rights and obligations which are so fixed by workers' compensation statutes in force on the date of injury because they form a part of the contract of employment).

[37] Hillcrest Med. Center v. Powell, 2013 OK 1, ¶ 8, 295 P.3d 13, 16, citing Cole v. Silverado Foods, Inc., 2003 OK 81, ¶ 15, 78 P.3d 542, 548 and CNA Ins. Co. v. Ellis, 2006 OK 81, ¶ 13, 148 P.3d 874, 877.

[38] American Airlines v. Crabb, 2009 OK 68, ¶ 10, 221 P.3d 1289, 1291-1292.

[39] King Mfg. v. Meadows, 2005 OK 78, ¶ 12, ¶16, 127 P.3d 584, 589, 590 (Court stated principle and concluded that "the award of permanent disability for a change in condition is governed by the statutory language in effect at the time of the initial injury, rather than the statutory limits in effect when the change in condition was discovered.").

[40] We note that our conclusion is consistent with the Court's holding in Bertrand v. Laura Dester Center, 2013 OK 18, ¶14, 300 P.3d 1188, 1192, where we stated that "Under the reasoning of Williams Companies, Inc. v. Dunkelgod, supra, we hold Claimant is entitled to receive travel costs to allow Claimant to receive the benefits of her award of vocational retraining which was made necessary by her accidental, work-related injury at Employer's place of business."

[41] Examples of opinions with similar results include American Ins. Ass'n v. State Indus. Com'n, 1987 OK 107, 745 P.2d 737, 74-741 (The trial tribunal's order was vacated and the cause remanded with directions to afford the petitioner a full opportunity to recast its challenges with respect to the proper statutes); and Zebco v. Houston, 1990 OK 113, 800 P.2d 245, 248 (claimant was provided with an opportunity on remand to prove her claim).

 






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 19, 739 P.2d 1025, 58 OBJ 905, Ashlock v. Liberty Glass Co.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 36, 721 P.2d 412, 57 OBJ 1553, Hamilton By and Through Hamilton v. Vaden
Discussed
 1987 OK 107, 745 P.2d 737, American Ins. Ass'n v. State Indus. Com'n
Discussed
 1988 OK 29, 752 P.2d 812, 59 OBJ 861, Knott v. Halliburton Services
Discussed
 1990 OK 113, 800 P.2d 245, 61 OBJ 2887, Zebco v. Houston
Discussed
 1992 OK 63, 841 P.2d 573, 63 OBJ 1359, Prettyman v. Halliburton Co.
Discussed
 1994 OK 37, 873 P.2d 983, 65 OBJ 1328, Wright v. Grove Sun Newspaper Co., Inc.
Discussed
 2001 OK 48, 32 P.3d 835, 72 OBJ 1797, WORLD PUBLISHING CO. v. WHITE
Discussed
 2001 OK 49, 32 P.3d 829, 72 OBJ 1807, WORLD PUBLISHING CO. v. MILLER
Discussed
 1936 OK 372, 57 P.2d 622, 177 Okla. 30, MAGNOLIA PETROLEUM CO. v. WATKINS
Discussed
 2001 OK 62, 28 P.3d 568, 72 OBJ 1972, BROKEN ARROW NURSING HOME v. RUFF
Discussed
 1932 OK 210, 9 P.2d 40, 156 Okla. 1, INDIAN TERR. ILLUMINATING OIL CO. v. DAVIS
Discussed
 1908 OK 49, 95 P. 624, 20 Okla. 687, DE GRAFFENREID v. IOWA LAND & TRUST CO.
Discussed
 1932 OK 795, 16 P.2d 859, 160 Okla. 224, CASWELL et al. v. BIRD et al.
Discussed
 1965 OK 172, 410 P.2d 61, BROWN v. MARKER
Discussed
 1971 OK 116, 488 P.2d 1243, 42 OBJ 2399, ORRICK STONE COMPANY v. JEFFRIES
Discussed at Length
 1972 OK 100, 500 P.2d 288, CITIES SERVICE GAS COMPANY v. WITT
Discussed
 2003 OK 43, 68 P.3d 991, MUSTAIN v. GRAND RIVER DAM AUTHORITY
Discussed
 2003 OK 81, 78 P.3d 542, COLE v. SILVERADO FOODS, INC.
Discussed
 2004 OK 4, 85 P.3d 813, AMOS v. SPIRO PUBLIC SCHOOLS
Discussed
 2004 OK 23, 91 P.3d 605, EDMONDSON v. PEARCE
Discussed
 1930 OK 195, 291 P. 513, 145 Okla. 159, FRANKLIN v. SOVEREIGN CAMP W. O. W.
Discussed
 2005 OK 78, 127 P.3d 584, KING MANUFACTURING v. MEADOWS
Discussed
 2006 OK 81, 148 P.3d 874, CNA INSURANCE CO. v. ELLIS
Discussed
 2007 OK 6, 154 P.3d 1257, SCRUGGS v. EDWARDS
Discussed
 2008 OK 9, 184 P.3d 496, TYLER v. SHELTER MUTUAL INSURANCE CO.
Discussed
 2008 OK 36, 184 P.3d 546, MOVANTS TO QUASH MULTICOUNTY GRAND JURY SUBPOENA v. DIXON
Discussed
 1929 OK 480, 281 P. 964, 139 Okla. 236, McMURTRY BROS. v. ANGELO
Discussed
 2009 OK 68, 221 P.3d 1289, AMERICAN AIRLINES INC. v. CRABB
Discussed at Length
 2010 OK 93, 246 P.3d 718, McBRIDE v. GRAND ISLAND EXPRESS, INC.
Discussed
 2011 OK 14, 249 P.3d 951, DUNLAP v. MULTIPLE INJURY TRUST FUND
Discussed
 2011 OK 29, 254 P.3d 678, CITY OF OKLAHOMA CITY v. INTERNATIONAL ASSOC. OF FIRE FIGHTERS, LOCAL 157
Discussed
 2011 OK 102, 290 P.3d 1, OKLAHOMA STATE CHIROPRACTIC INDEPENDENT PHYSICIANS ASSOC. v. FALLIN
Discussed
 2012 OK 45, 277 P.3d 1282, NOMAC DRILLING LLC v. MOWDY
Discussed
 2012 OK 96, 295 P.3d 1107, WILLIAMS COMPANIES, INC. v. DUNKELGOD
Discussed
 2012 OK 104, 298 P.3d 529, PRINCE v. BRAKE REBUILDERS & FRICTION PRODUCTS, INC.
Discussed at Length
 2012 OK 107, 292 P.3d 29, HOGG v. OKLAHOMA COUNTY JUVENILE BUREAU
Discussed
 2013 OK 1, 295 P.3d 13, HILLCREST MEDICAL CENTER v. POWELL
Discussed at Length
 2013 OK 8, 301 P.3d 405, CONTROLS COMPONENTS, LTD. v. WEAVER
Discussed
 2013 OK 18, 300 P.3d 1188, BERTRAND v. LAURA DESTER CENTER
Discussed
 1975 OK 88, 540 P.2d 545, APPLE v. STATE INSURANCE FUND
Discussed
 2013 OK 43, 305 P.3d 1004, STARKEY v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed
 2013 OK 66, 307 P.3d 342, JOE BROWN COMPANY, INC. v. MELTON
Cited
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 2014 OK 31, CDR SYSTEMS CORPORATION v. OKLAHOMA TAX COMMISSION
Cited
 1980 OK 48, 609 P.2d 777, Lee Way Motor Freight, Inc. v. Wilson
Discussed
 1978 OK 95, 580 P.2d 986, BURNS v. SOUTHWESTERN PREFERRED PROPERTIES
Discussed
 2000 OK 12, 996 P.2d 935, 71 OBJ 552, Pitchford v. Jim Powell Dozer, Inc.
Discussed
 1981 OK 112, 641 P.2d 1106, Union Oil Co. of California v. Brown
Discussed
 1981 OK 160, 638 P.2d 464, Board of Regents of University of Oklahoma v. Baker
Discussed
 1982 OK 117, 653 P.2d 531, State ex rel. Murphy v. Boudreau
Discussed
 1982 OK 132, 656 P.2d 914, First Nat. Bank of Pauls Valley v. Crudup
Discussed
 1951 OK 5, 226 P.2d 916, 204 Okla. 45, NATIONAL BANK OF TULSA BLDG. v. GOLDSMITH
Discussed
 1999 OK 15, 995 P.2d 1071, 70 OBJ 774, Beets v. Metropolitan Life Insurance Co.
Discussed
 1999 OK 44, 981 P.2d 1253, 70 OBJ 1664, Taylor v. State Farm Fire and Casualty Co.
Discussed
 2000 OK 66, 11 P.3d 626, 71 OBJ 2361, WALLS v. AMERICAN TOBACCO, CO.
Discussed
 2000 OK 68, 12 P.3d 452, 71 OBJ 2366, RIVAS v. PARKLAND MANOR
Discussed at Length
 1943 OK 432, 144 P.2d 447, 195 Okla. 561, WIMBERLY v. DEACON
Discussed
 1983 OK 53, 663 P.2d 1221, Weber v. Armco, Inc.
Discussed
 1984 OK 8, 692 P.2d 548, Iwunoh v. Maremont Corp.
Discussed at Length
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 326, Repealed by Laws 2013, SB 1062, c. 208, § 171, eff. February 1, 2014
Discussed at Length
 85 O.S. 329, Repealed by Laws 2013, SB 1062, c. 208, § 171, eff. February 1, 2014
Cited
 85 O.S. 340, Repealed by Laws 2013, SB 1062, c. 208, § 171, eff. February 1, 2014
Discussed
 85 O.S. 14, Repealed by Laws 2011, SB 878, c. 318, § 87
Discussed at Length
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 3, Applicability of Act
Cited